K. F. K. CORPORATION, Plaintiff-Appellee, *v.* AMERICAN CONTINENTAL HOMES, INC., *et al.*, Defendants-Appellants.

(No. 75-115;

Second District (2nd Division)—September 17, 1975.

Taussig, Wexler & Shaw, of Chicago, for appellants.

S. Louis Rathje and R. Terrence Kalina, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendants appeal from the trial court's having granted the plaintiff a preliminary injunction which restrained the defendants from obtaining certain shares of stock held by the Union Commerce Bank of Cleveland, Ohio. Defendants contend that the preliminary injunction order was defective, that the trial court abused its discretion by granting plaintiff a preliminary injunction and erred in not requiring plaintiff to post a bond on the issuance of the preliminary injunction.

On June 8, 1972, the plaintiff and the defendant, American Continental Homes, Inc. (ACH), entered into a contract for the sale of a parcel of partially developed real estate. Part of the consideration paid by ACH to plaintiff for the realty was 46,380 shares of unregistered ACH common stock. Under subparagraph 3(f)(iv),[1] plaintiff had the conditional right

---

[1] "3(f)(iv) In the event that KFK fails to exercise the right given to it under the provisions of the immediately preceding paragraph 3(f), then KFK shall have the right after July 5, 1974, and prior to July 15, 1974, to elect either (aa) to retain its ACH shares owned by it on July 5, 1974, or (bb) to dispose of said shares; and in the latter event, KFK shall undertake, utilizing all reasonable efforts, to dispose of so many of the ACH Common shares as may be sold by it in conformity with the provisions of the Securities Act of 1933 and for the market price of such shares then prevailing, and if all of said shares are not so disposed of, *then within Ten (10) days after September 5, 1974, ACH or American Financial Corporation as guarantor agrees that it shall purchase, if offered to it by KFK, the ACH stock which KFK has theretofore been unable to dispose of in accordance with this paragraph for the purchase price which shall be the difference between the net proceeds of the ACH stock which KFK has theretofore disposed of, either during said period after July 5, 1974, or prior thereto, and Eight Hundred Fifty Thousand Dollars ($850,000).* KFK shall notify ACH in writing prior to July 16, 1974, of its choice as to the options available to it during the period of July 5, 1974, and July 15, 1974." (Emphasis added.)

to either retain the stock or sell the shares on the open market. If plaintiff chose the latter alternative, then defendant, American Financial Corporation (AFC) as guarantor, agreed to purchase all unsold shares for the difference between the net proceeds of the shares sold and $850,000.

ACH additionally agreed, pursuant to paragraph 3(h),[2] to provide to the plaintiff a loan totaling $500,000, the same to be collateralized by all the ACH stock issued to plaintiff. In accordance with this provision, ACH provided the loan through the Union Commerce Bank of Cleveland, Ohio,[3] and in return for the loan, plaintiff, on August 31, 1972, transferred all its shares of ACH stock to the bank as collateral.

On July 5, 1974, plaintiff notified the defendants of its election to dispose of the stock and that within ten days after September 5, 1974, it would look to the defendants for the difference between the amount of the net proceeds of any shares sold by plaintiff and $850,000. The defendants made no tender of funds to plaintiff. On September 12, 1974, the Bank notified the plaintiff that the principal and interest on the loan were due and payable on September 13, 1974, and that it would assign the note and collateral to AFC, which had agreed to purchase the note if the bank did not receive payment on or before the above date.

On September 16, 1974, the plaintiff filed suit for specific performance of the terms of the real estate sales contract. In addition, the plaintiff filed a petition for a temporary restraining order which sought to enjoin the defendants from taking any action with regard to the shares of stock held by the Bank. The temporary restraining order was granted on the same day, and the defendants' motion to dissolve, which was heard on February 15, 1975, was denied. On February 20, 1975, after a hearing wherein all parties were represented, the plaintiff's verified petition for

---

[2] "3(h) Within Ten (10) days after request therefor by KFK, *ACH agrees to provide to KFK a loan or loans totalling Five Hundred Thousand Dollars ($500,000) to be collateralized by all of the ACH Stock to be issued to KFK under the terms of this Contract and by KFK's rights under this Contract as it relates to the obligation of ACH and its Guarantor* to make up any difference in value of the ACH Stock as hereinabove provided. The terms of said loan shall provide for interest at the rate of Eight Per Cent (8%) per annum payable quarterly with the entire principal of *said Note payable twenty-six (26) months from the date of the closing of this transaction.*" Emphasis added.

[3] This was communicated to the plaintiff in a letter dated August 17, 1972, which letter states in part:

"Presently, we are arranging a loan through the Union Commerce Bank, Cleveland, Ohio, which has initially agreed to the above but only through December 31, 1973.

Consistent with the terms of said contract, we shall furnish, at no cost and expense to you, alternate means of financing in the event the Union Commerce loan is not renewed."

a preliminary injunction was allowed. The defendants did not file an answer to the petition.

The defendants appeal from the order granting the plaintiff a preliminary injunction asserting that the injunction order is defective for having failed to state the reasons for its issuance. (See Ill. Rev. Stat. 1973, ch. 69, § 3—1.) The order, approved as to form by defendants, reads:

"This cause coming on for hearing on petition of the plaintiff, K.F.K. Corp., for a preliminary injunction against the defendants, and each of them from accepting, receiving, transferring, assigning or disposing of the collateral held by the Union Commerce Bank pursuant to a pledge agreement and assignment and the Court having heard the testimony, examined the documents introduced into evidence and the arguments of counsel and being fully advised in the premises:

It is ordered, upon good cause shown, that the defendants, and each of them, their officers agents and employees, be enjoined and restrained from accepting, receiving, transferring, assigning or disposing of the collateral held by the Union Commerce Bank pursuant to the Pledge Agreement and Assignment."

■■ The issuance of a preliminary injunction is within the sound discretion of the trial court upon a *prima facie* demonstration of necessity and a court of review will not set aside the injunction order unless there is a manifest abuse of discretion or an error of law. (*Board of Education v. Peoria Education Association*, 29 Ill.App.3d 411, 413, 330 N.E.2d 235, 236-37 (1975).) Where as here, the parties are present and a hearing has been had, the mere recitals to the affect that the court was fully advised of the premises or has issued the injunction upon "good cause shown" have been held sufficient to sustain the presumption that the trial court considered the order to be based upon sufficient evidence, especially where no responsive pleadings have been filed. *Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B*, 27 Ill.App.3d 500, 504 (1975).

■■ Defendants' challenge concerns the failure of the court to detail the reasons for the entry of the order. While the trial court might have elaborated more fully upon its findings garnered from the plaintiff's petition, the testimony taken, the documents introduced, and the arguments of counsel, we do not find the court's failure to state such conclusions to be, in and of itself, grounds for reversal. The issues clearly apprised the defendants of the reasoning for the court's ruling. *Brooks v. La Salle National Bank*, 11 Ill.App.3d 791, 800 (1973).

■■ As to defendants' second contention, we note that an applicant is

not entitled to a preliminary injunction as a matter of right but must show that his legal remedies are inadequate, that he will be irreparably harmed without issuance, and that he has a lawful right for which he seeks protection. (*G.H. Sternberg & Co. v. Cellini*, 16 Ill.App.3d 1, 5 (1973).) Having met these requirements, the court may issue the preliminary injunction for the purpose of preserving the status quo until the case can be considered on its merits. *D. Nelsen & Sons, Inc. v. General American Development Corp.*, 6 Ill.App.3d 6, 9 (1972); *Keeshin v. Schultz*, 128 Ill.App.2d 460, 469 (1970).

The defendants maintain that the plaintiff has an adequate remedy at law and that the plaintiff has failed to sufficiently prove the probability of irreparable harm. The defendants assert that the plaintiff is only seeking money damages for which the law provides an adequate remedy, and that the plaintiff has failed to demonstrate how the stock transfer would irreparably harm plaintiff in its action for money damages.

■■ The existence of a remedy at law does not deprive equity of its power to grant injunctive relief unless the remedy is adequate; *i.e.*, the remedy at law must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. (*McGinniss v. First National Bank*, 214 Ill.App. 295, 299 (1919); *Freeman v. Freyer*, 30 Ill.App.2d 185, 190 (1961).) Thus, the fact that plaintiff's ultimate relief may be a money judgment does not deprive a court of equity the power to grant a preliminary injunction. ■■ The uncontroverted pleading and evidence show that if the preliminary injunction were not granted, the rights of the plaintiff under the contract could be extinguished by the actions of AFC in acquiring the shares from the bank. Plaintiff would thereby be irreparably harmed in that it would be unable to tender the shares and would thereby lose all rights under the contract. We therefore find the defendants contention without merit and conclude that the trial court did not abuse its discretion in granting the preliminary injunction.

■■ The defendants next maintain that the trial court erred in not requiring the plaintiff to post a bond before issuing the preliminary injunction. (Ill. Rev. Stat. 1973, ch. 69, § 9.) When a preliminary injunction order is issued after notice and hearing, it is not error for the trial court to issue the injunction without bond. (*John Deere Co. v. Hinrichs*, 36 Ill.App.2d 255, 270-71 (1962).) A party's failure to seek a bond waives the necessity for the same. (*Presbyterian Distribution Service v. Chicago National Bank*, 21 Ill.App.2d 188, 193-94 (1959); *Russell v. Russell*, 329 Ill.App. 580, 587-88 (1946).) In the present cause, the defendant failed

1022

to request a bond or object to the issuance of the preliminary injunction without a bond. Under such circumstances, the bond requirement was waived. *Berger v. Kosden*, 3 Ill.App.2d 118 (1954).

Judgment affirmed.

RECHENMACHER, P. J., and DIXON, J., concur.