DRYVIT SYSTEM, INC., Plaintiff-Appellant, v. CHESTER RANDAL RUSHING, Defendant-Appellee.

First District (4th Division)   No. 84—2147

Opinion filed March 28, 1985.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (Donald G. Peterson and Karla Wright, of counsel), for appellant.

Chapman & Cutler, of Chicago (Michael W. Ford, John B. Huck, Richard A. Wohlleber, and David S. Barritt, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Chester Randal Rushing, the defendant, was regional sales manager of Dryvit System, Inc., the plaintiff. In consideration for continued employment he signed an agreement not to compete with Dryvit nor disclose confidential information at the conclusion of his employment. Dryvit brought this action, contending that after leaving its employment Rushing violated the agreement. Dryvit sought to enjoin Rushing based on the terms of the agreement, along with other relief. The trial court granted Rushing's motion for judgment on the pleadings and consequently denied the injunction. The court further denied Dryvit leave to amend the complaint to severely limit the geographic scope of injunctive relief sought to an area substantially less than the area fixed by the agreement. The propriety of the denial of the amendment and the scope of the agreement, more particularly the geographic scope, form the issues on appeal.

Rushing went to work for Dryvit in February, 1978. The complaint alleges that Dryvit was engaged in the manufacture and distribution of exterior wall insulation under the copyright "Dryvit Outsulation." It alleged that Dryvit does business throughout the entire United States, as well as Canada, Mexico, Europe, the Middle East and the Far East. It has a nationwide network of distributors. The product has been applied to over 40,000 buildings in the United States. On July 18, 1979, after Rushing had been with Dryvit for over 16 months he signed the rather brief two-paragraph agreement. The first paragraph concerns confidential information and trade secrets and is not in issue on appeal. The agreement reads:

"In consideration of my continued employment by DRYVIT SYSTEM, INC., I do hereby agree and covenant:

\* \* \*

2. It is understood and agreed that I will refrain from engaging, directly or indirectly, *in business whose activities are* competitive with the activities of *DRYVIT SYSTEM, INC. for a period of two (2) years from the date of termination of employment.* It is further agreed that while I am in the employ of DRYVIT SYSTEM, INC. and *for a period of two (2) years from the date of termination of employment, that I will not, directly or indirectly,* for myself or any other person, firm or corporation, in any way, *solicit business* of a type similar to that solicited by DRYVIT SYSTEM, INC. *from any of DRYVIT SYSTEM INC.'s present customers, nor will I become associated, directly or indirectly, with any business, firm, person or corpo-*

*ration whose activities are competitive with those of DRYVIT SYSTEM, INC. in any area of the Continental United States in which DRYVIT SYSTEM INC. is doing business at the time of the termination of my employment."* (Emphasis added.)

Rushing resigned on March 8, 1983. A week later he began employment with a competitor. The instant action was filed some 15 months later, on June 13, 1984.

Rushing filed a motion for judgment on the pleadings. As refined on appeal the question concerns the geographic scope of the agreement. Rushing contends that it is *per se* void because it is a general restraint of trade and also that it is void because it is unreasonable. Rushing further claims the agreement lacks consideration.

Dryvit sought leave to amend its petition for preliminary injunction to considerably narrow the scope of its prayer for relief. Under the terms of the agreement, Rushing was restricted for two years, without geographical limitation, from either engaging in a competitive business or soliciting business from Dryvit's present customers and further from associating with anyone competitive with Dryvit within the continental United States. In contrast, Dryvit's proposed amendment to the complaint would prohibit Rushing from soliciting "a customer of Dryvit in the continental U.S. from a period of July 18, 1979 to March 8, 1983 [*sic*] in which individual or entity had been contacted by defendant as part of his employment agreement with Dryvit." The trial court denied the motion to amend the prayer for relief and granted the motion for judgment on the pleadings and, consequently, denied the injunction.

The propriety of the proposed amendment must first be considered before we can determine the reasonableness of the agreement itself, which will be discussed subsequently. In denying leave to file the amendment, the trial court believed that this amendment would actually reform the contract in that the amendment was tantamount to writing a new contract. The court commented that to allow the amendment under these circumstances would have the effect of discouraging the narrow and particularized draftmanship which should be reflected in written agreements.

*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21, treated the issue of amendments. The court stated "[w]hile we do not hold that a court of equity may never modify the restraints embodied in a contract of this type and enforce them as modified, the fairness of the restraint initially proposed is a relevant consideration to a court of equity." (37 Ill. 2d 32, 39, 225 N.E.2d 21.) A lengthy and well-considered article, Blake, *Employee Agreements Not to Compete,*

73 Harv. L. Rev. 625 (1960), discusses the subject of severance of certain conditions from post-employment restraints. (73 Harv. L. Rev. 625, 681-84.) The author comments that courts and writers have engaged in a hot debate as to whether severance should ever be applied to these contracts. The author notes that the arguments against changing these covenants are that they have an *"in terrorem* effect on employees who respect their contractual obligations and on competitors who fear legal complications if they employ a covenantor, or who are anxious to maintain gentlemanly relations with their competitors." (73 Harv. L. Rev. 625, 682.) Further, the author notes that if employers are confident that the courts will pare down covenants they will fashion truly ominous covenants. (73 Harv. L. Rev. 625, 683.) *Hiyane* adopted the same rationale and commented that to stake out unrealistic boundaries imposes on the employee the risk of proceeding at his peril with the burden of expensive litigation to ascertain the scope of his obligation. *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 39, 225 N.E.2d 21.

The Restatement (Second) of Contracts considers the unenforceability of contracts on the grounds of public policy and, more particularly, the issue of severability. (Restatement (Second) of Contracts sec. 184 (1981).) Section 184 provides that if part of the agreement is unenforceable, the court might nevertheless enforce the balance of the agreement if the party seeking enforcement "did not engage in serious misconduct." Restatement (Second) of Contracts sec. 184(1) (1981).

■ Keeping in mind the foregoing principles, we now turn to consider the agreement in the present case. It is apparent that the agreement is very broad. As Rushing states, it prevents him from engaging in any competitive business anywhere in the United States; from soliciting business from companies that have never been customers of Dryvit and which Rushing did not even know about until after he had left Dryvit's employ; from being employed in a nonselling position in a competitive business where he is not in contact with any customer; and from being employed in a noncompetitive division of a corporation which had another division which did compete with Dryvit. The validity of a contract and restraint of competition is determined by its reasonableness in terms of its effect on the parties and the public. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21.) It is reasonable if its enforcement will not be injurious to the public, nor cause undue hardship to the promissor, and is not greater than is necessary to protect the employer. It must be reasonable as to time, geographical scope and activity. (37 Ill. 2d 32, 37, 225 N.E.2d 21; 73 Harv. L. Rev. 625, 674-81.) However, the unlimited geographic restraints on

competitive activities and solicitation of business and the further restriction from association with a corporation whose activities are competitive in the continental United States are patently beyond the needs of the employer to protect his interest and are unduly harsh on the employee.

Dryvit, however, defends the geographical scope. First, it argues that the court cannot determine the geographic scope from the agreement itself and extrinsic evidence, therefore, is necessary. With this we disagree. The complaint alleges that Dryvit conducts business in a number of foreign countries, as well as in the entire United States. Dryvit suggests that evidence will show what the exact geographic scope is intended under the agreement. However, in order to permit this evidence, Dryvit must first show that the contract is ambiguous. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 364 N.E.2d 939.) The agreement is certainly not ambiguous on its face, and Dryvit has not alleged, beyond the mere assertion in its pleadings, how an ambiguity exists in the instant agreement.

Secondly, Dryvit contends that case law permits such broad agreements. The case that draws most comments on the subject is *Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 451 N.E.2d 1338, which upheld a covenant that had no geographic limitation. Most significant in *Lawter*, however, is that it did not involve a post-employment restriction such as the one we have here. *Lawter* involved the sale of a business for which John Carroll received $550,000. The interest to be protected there is the value of the goodwill that Lawter purchased. This is different than the protection that the employer seeks in post-employment covenants. In the sale of a business, the bargaining power is not uneven, as it is generally in an employer/employee relationship where the courts are more likely to declare a post-employment restraint as invalid than they would be in the sale of goodwill. *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21; *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 356, 134 N.E.2d 329; 73 Harv. L. Rev. 625, 646-48; Restatement (Second) of Contracts sec. 188(2)(a) comments b, f and g (1981); Williston, Contracts sec. 1638 (3d ed. 1972).

Dryvit also cites a number of other cases subsequent to *Hiyane* for the proposition that a broad geographical application does not automatically invalidate a post-employment restraint. In each of the following cited cases, however, although there were no geographical restrictions, the geographical prohibition was qualified by an activity restraint. (See 73 Harv. L. Rev. 625; Restatement (Second) of Contracts sec. 188, comments d and g (1981).) That is, in *Wolf & Co. v.*

*Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603, although there was no geographical limitation, the employee was only restrained from contacting former clients. Similarly *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300, imposed a three-year limitation without geographical restriction except that the employee was only restricted from contacting certain customers and only with regard to confidential information. Activity restraints, as well as restrictive covenants concerning confidential information and trade secrets, are subject to a less stringent test of reasonableness than that which is applied to restrictions with a geographical limitation. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37-38, 225 N.E.2d 21; 73 Harv. L. Rev. 625, 675, 679; Hutter, *Drafting Enforceable Employee Non-Competition Agreements To Protect Confidential Business Information; A Lawyer's Practical Approach to the Case Law*, 45 Alb. L. Rev. 311, 332-33 (1981).) In *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060, without geographic limitation, the employee was restricted from soliciting any of the employers' customers. The instant case did not involve the sale of a business and goodwill, nor did it contain any activity restriction.

Consequently, on the issue of amendment the standard is the fairness of the restraints initially imposed. Considering the very broad geographical scope which is clearly unreasonable in the present agreement, and further considering that the agreement makes no attempt to reasonably limit the restrictions, thereby placing the employee in the position of peril, we believe the instant agreement is unfair. The comments of *Hiyane* concerning the expensive litigation that an employee must engage in to determine the reasonableness of the agreement is certainly borne out here. The trial court properly exercised its discretion in this equitable manner in determining that the agreement should not be modified.

Since the agreement is not modified, the motion for judgment on the pleadings attacks the agreement directly. Rushing, as we mentioned before, attacks the agreement's geographical scope on two grounds. First, he contends it is unreasonable under *Hiyane*. We have already considered that argument in deciding the issue of amendment and found that indeed it is unreasonable. Consequently, the trial court was correct in dismissing the complaint. Secondly, Rushing alternatively contends that the agreement is *per se* invalid as a general restraint of trade. *Hursen v. Gavin* (1896), 162 Ill. 377, 44 N.E. 735, which Rushing cites to support this assertion, defined general restraints of trade in two ways. Contracts in restraint of trade were general if "a party binds himself not to carry on his trade or business at

all, or not to pursue it within the limits of a particular country or State." (162 Ill. 377, 380, 44 N.E. 735.) *Hursen* concluded that general restraints of trade were invalid. In the instant case, Rushing asserts that because the agreement lacks geographical scope in two respects and further includes a restriction covering the entire continental United States in a third respect, the agreement is a general restraint of trade. Dryvit responds that *Hiyane* sets forth a new standard that examines all restraints on a reasonable standard, thus obviating the *per se* rule. With that position, we agree. While here we are dealing with a general restraint of unlimited geographic scope, rather than a general restraint with a lack of time limitation as in *Hiyane*, the court nonetheless in *Hiyane* had before it a general restraint of trade but considered it on the standard of reasonableness. We conclude that the court was establishing a standard of reasonableness to be considered in all restraint of trade cases. That is a position adopted by the Restatement (Second) of Contracts sec. 188 (1981). Comment d of this section notes that the extent of the restraint, in particular, by geographical area, will be evaluated in terms of its reasonableness under the circumstances. (Restatement (Second) of Contracts sec. 188 comment d (1981).) As one commentor noted, this is the old view and is no longer valid under the modern view of reasonableness. (Hutter, *Drafting Enforceable Employee Non-Competition Agreements To Protect Confidential Business Information; A Lawyer's Practical Approach to the Case Law*, 45 Alb. L. Rev. 311, 329-30 (1981).) Williston on Contracts approves of authority that states that the old view, that any restraint of trade covering an entire State or the nation is *per se* unreasonable, is no longer controlling, as the boundaries of States are not those of trade and commerce. (Williston, Contracts sec. 1638, at 111 (3d ed. 1972).) Thus, the reasonableness standard accommodates geographic limitations. In a given situation it may be totally reasonable to both the employer and the employee to have a statewide limitation, whereas under another circumstance, as many of the cases hold, the limitation of just a few miles is unreasonable.

Finally, Rushing argues that there was no consideration for this contract and it is, consequently, void. Since we have already determined that the contract is void, we will not reach this issue.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.