**SAMUEL BINGHAM COMPANY, a Delaware corporation, Plaintiff,**

v.

**Eduardo R. MARON, New England Roller and Supply Company, a corporation, and New England Newspaper Supply Company, a corporation, Defendants.**

No. 86 C 6899.

United States District Court, N.D. Illinois, E.D.

Oct. 29, 1986.

Steven J. Rosenberg, Chicago, Ill., for plaintiff.

William A. Streff, Jr., Philip C. Swain, Kirkland & Ellis, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This action arises from an employment agreement between plaintiff Samuel Bingham Company ("Bingham") and defendant Eduardo R. Maron. Mr. Maron left Bingham and apparently is now employed by defendant New England Newspaper Supply Company ("NENSCO"). Defendant New England Roller and Supply Company ("NERSCO") also contacted Mr. Maron about possible employment after he left Bingham.

The complaint consists of three counts. Count I alleges that Mr. Maron breached his covenant not to compete with Bingham. Count II alleges that Mr. Maron breached his covenant not to disclose Bingham's confidential information. Counts I and II seek an injunction against Mr. Maron and damages from him. Count III alleges that defendants NERSCO and NENSCO ("the corporate defendants") tortiously interfered with the contractual relations between Bingham and Mr. Maron; it seeks an injunction against the corporate defendants and damages from them.

Bingham now moves this court for a preliminary injunction that would

(1) enjoin Mr. Maron from working for any of Bingham's competitors, including but not limited to NERSCO and NENSCO;

(2) enjoin the corporate defendants from continuing to employ Mr. Maron; and

(3) enjoin Mr. Maron from disclosing, and the corporate defendants from using,

any confidential information obtained by Mr. Maron in the course of his employment by Bingham.

(Plaintiff's motion for preliminary injunction at 4.)

For the following reasons, the motion is denied.

### FACTS

Mr. Maron worked for The Rapid Roller Company in New Jersey for seven years as a grinder, polisher and ultimately as supervisor of manufacturing. Mr. Maron left in February 1978 to begin working for Bingham as production manager at its Woburn, Massachusetts plant. The terms of Maron's employment with Bingham were set forth in a February 24, 1978 letter from Robert E. Jenkins, vice-president of Bingham.[1] The letter outlined Maron's base pay, provisions for raises and bonuses, and reimbursement for Maron's moving expenses. The letter makes no mention of any non-competition or non-disclosure covenants. Mr. Jenkins claims to have discussed with Mr. Maron the Bingham practice of requiring its employees to sign agreements containing such covenants before Mr. Maron came to work for Bingham (Jenkins aff. ¶ 6). However, Mr. Maron denies that anyone discussed the agreement with him before he began working for Bingham (Maron aff. ¶ 4).

Sometime after Mr. Maron began his employment at Bingham, and after he arranged to move his family to Massachusetts from New Jersey, he was asked to sign Bingham's "Employment Agreement" ("the agreement"). At first he refused because of the covenant not to compete. Mr. Maron claims that he signed the agreement only after being assured by Jenkins that it was "only a formality" and that Bingham would "never use the agreement against [him]" (Maron aff. ¶ 5). Mr. Jenkins denies making those statements (Jenkins aff. ¶ 6).

Paragraph 4 of the agreement provides in relevant part that the employee

> will not, for a period of one year after termination of employment for any reason, wilfully aid or serve as an employee, agent, director, officer, principal or consultant to or for any competitor of the Company.

The covenant not to compete applies to all activities in any capacity and has no geographic limitation.[2] Paragraph 3 of the agreement states that the employee will not disclose any of Bingham's confidential information.[3]

> The Employee agrees that during the employment with the Company and thereafter, Employee will not, without the Company's written consent in each case first obtained, directly or indirectly, use for Employee or for others, or disclose to any third party, any secret or confidential information, knowledge or date regarding costs, uses, applications or purchasers of products made or sold by the Company or regarding any apparatus, process, formula, roller application, recipes or manufacturing methods at any time used, developed or investigated by the Company. Employee agrees to deliver promptly to the Company at the termination of his employment or at any other time the Company may request, all memoranda, notes, records, plats, sketches, recipes, formulae, plans or other documents made or compiled by or delivered to Employee concerning costs, processes, methods, uses, applications or purchasers of products made or sold by the Company, or any products apparatus or process, manufactured, used, developed or investigated by the Company during said employment. Employee will retain no copies of any of them.

---

1. Certain errors in the February 24, 1978 letter were corrected in a second letter dated March 21, 1978. Except for the errors, which are not relevant here, the letters are identical.

2. In its entirety, ¶ 4 of the agreement states: Employee agrees that he will not, for a period of one year after termination of employment for any reason, wilfully aid or serve as an employee, agent, director, officer, principal or consultant to or for any competitor of the Company. A competitor of Company shall be deemed as any business entity engaged in the manufacture, sale or distribution of any product or products substantially competitive with any product manufactured, sold or considered for manufacture or sale by Company during Employee's employment, in any country or countries throughout the world where the Company manufacturers or markets its products. The ownership of shares of stock in a competitor of Company which is publically [sic] traded on a stock exchange shall not be considered in violation of this covenant.

3. Par. 3 of the agreement states:

Mr. Maron left Bingham on May 16, 1986. For the next two weeks he began preparing to work for his brother's trucking company. However, he was contacted by one or both of the corporate defendants. On June 2, 1986 Mr. Maron accepted a position as a salesman for NENSCO and he has been employed in that capacity since then. According to Mr. Maron his duties and responsibilities as a salesman for NENSCO are totally different from his duties and responsibilities as a production manager at Bingham (Maron aff. ¶ 10).

## DISCUSSION

■ To obtain the preliminary injunction it seeks, Bingham must show:

(1) that it has no adequate remedy at law;

(2) that it will suffer irreparable harm if the preliminary injunction is not issued;

(3) that the irreparable harm it will suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant will suffer if the injunction is granted;

(4) that it has a reasonable likelihood of success on the merits; and

(5) that the injunction will not harm the public interest.

*Brunswick Corp. v. Jones,* 784 F.2d 271, 273–74 & n. 1 (7th Cir.1986); *see Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386–88 (7th Cir.1984).

Assuming for the moment that the other requirements are met, this court is nevertheless not persuaded that Bingham has shown a sufficient probability of success on the merits of its claim to enforce Mr. Maron's covenant not to compete. The enforceability of such a covenant ordinarily depends on whether its time, territory and activity restrictions are reasonably necessary to protect the employer's legitimate business interests. *See, e.g., Reinhardt Printing Co. v. Feld,* 142 Ill.App.3d 9, 15, 96 Ill.Dec. 97, 102, 490 N.E.2d 1302, 1307 (1st Dist.1986); *Dryvit Systems, Inc. v. Rushing,* 132 Ill.App.3d 9, 12, 87 Ill.Dec. 434, 437, 477 N.E.2d 35, 38 (1st Dist.1985). Bingham's covenant not to compete impos-

es unlimited geographic and activity restrictions. If enforced, the covenant would prevent Mr. Maron from working in any capacity for any of Bingham's competitors, wherever they are located.

All parties agree that Illinois law governs the agreement. The rule in Illinois used to be that the lack of a geographic limitation in a covenant not to compete rendered the covenant unenforceable *per se. See, e.g., Parish v. Schwartz,* 344 Ill. 563, 176 N.E. 757 (1931); *Hursen v. Gavin,* 162 Ill. 377, 44 N.E. 735 (1896). Exceptions to this general rule have developed, and the *per se* rule has largely given way to a rule of reason. For example, activity restrictions reasonably related to the former employer's interest in protecting its customer relations, typically restrictions against the former employee soliciting certain customers or using customer lists, do not necessarily require geographic limitations. *See, e.g., McRand, Inc. v. Van Beelen,* 138 Ill. App.3d 1045, 1057, 93 Ill.Dec. 471, 480, 486 N.E.2d 1306, 1315 (1st Dist.1985); *Dryvit Systems, Inc. v. Rushing,* 132 Ill.App.3d 9, 13–14, 87 Ill.Dec. 434, 437–38, 477 N.E.2d 35, 38–39 (1st Dist.1985); *Lawter International, Inc. v. Carrol,* 116 Ill.App.3d 717, 727–28, 72 Ill.Dec. 15, 22, 451 N.E.2d 1338, 1345 (1st Dist.1983).

Relying on this line of cases, Bingham claims that its covenant not to compete does not need a geographic limitation because it is designed to protect its interest in its customers. However, in the cases approving unlimited geographic restrictions, the covenant not to compete at issue applied only to limited activities. That is, former employees were not prohibited from working for their former employers' competitors in any capacity; they were only prohibited from engaging in certain activities, such as soliciting customers of their former employers with whom they had developed relationships, or using their former employers' confidential information.

In contrast, the unlimited geographic restrictions imposed on Mr. Maron by Bingham's covenant are not qualified by limited activity restrictions. In fact, Bingham's

covenant not to compete is even broader than the one held to be unreasonable in *Dryvit*. In that case, the court declared that

the unlimited geographic restraints on competitive activities and solicitation of business and the further restriction from association with a corporation whose activities are competitive in the continental United States are patently beyond the needs of the employer to protect his interest and are unduly harsh on the employee.

132 Ill.App.3d at 12–13, 87 Ill.Dec. at 437, 477 N.E.2d at 38. That statement applies with even greater force to Bingham's covenant, which would prevent Mr. Maron from working for any competitor in any capacity "throughout the world."

Because both the geographic and activity restrictions in Bingham's covenant are unlimited, the likelihood that Bingham can prevail on the merits by showing that the covenant is still somehow reasonable is infinitesimal. Although a plaintiff is only required to show that his chances of success at trial are "better than negligible," *see Omega Products Satellite Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982), Bingham fails to meet even this minimum threshold.

Alternatively, even if Bingham's likelihood of success on the merits is slightly better than negligible, the balance of hardship tips in Mr. Maron's favor. To enforce a covenant not to compete, a plaintiff must show injury to its legitimate business interests separate and distinct from the defendant's breach of the covenant. *Reinhardt Printing Co. v. Feld*, 142 Ill.App.3d 9, 15, 96 Ill.Dec. 97, 102, 490 N.E.2d 1302, 1307 (1st Dist.1986). Bingham invokes two interests to justify enforcing its covenant not to complete: (1) its interest in the confidentiality of its rubber formulations and proprietary aspects of its manufacturing processes, and (2) its interest in not losing its customers to Mr. Maron's new employer (Plaintiff's mem. at 5). But as production manager at Bingham, Mr. Maron's contacts with Bingham's clients were very limited (Maron aff. at ¶ 7). As a salesman for NENSCO, his opportunity to misuse confidential information about Bingham's production processes and rubber formulations is also very limited (Maron aff. at ¶ 10).

■ Bingham supplies a more accurate description of the "harm" it seeks to avoid in its memorandum:

Maron's value as an employee is his knowledge of the rubber roller industry which includes his employment experience at Bingham. It is Maron's ability to use this knowledge, to the disadvantage of Bingham, that plaintiff attempted to prevent by the subject covenant.

(Plaintiff's mem. at 6.) This interest is not protectable with a restrictive covenant under Illinois law. A terminated employee is free to use general skills and knowledge acquired during employment. *See, e.g., Rao v. Rao*, 718 F.2d 219, 223–24 (7th Cir. 1983); *MBL (USA) Corp. v. Diekman*, 112 Ill.App.3d 229, 236, 67 Ill.Dec. 938, 945, 445 N.E.2d 418, 424 (1st Dist.1983). The harm to Bingham if the preliminary injunction is denied is therefore slight.

■ Weighing on the other side of the balance, the only jobs Mr. Maron has had since coming to the United States from Chile in 1969 have related to rubber roller production and sales. If Bingham's covenant not to compete were enforced, Mr. Maron would be forced to seek work in an entirely different industry, a prospect likely to impair his ability to earn a living and support his family (Maron aff. at ¶ 11). This type of harm to the employee was one of the original justifications for enforcing only limited covenants not to compete,[4] and it is entitled to considerable weight.

---

**4.** In *Hursen v. Gavin*, the Illinois Supreme Court declared that:

Undoubtedly contracts in total restraint of trade are void, and upon two grounds, *first* because of the injury to the public by being deprived of the industry of the party who is restrained, and *second*, because of the injury to the party himself by being deprived of the opportunity to pursue his occupation and thereby support his family.

162 Ill. at 379, 44 N.E. at 735 (emphasis in original).

Moreover, this suit was filed more than three months after Mr. Maron began working for NENSCO. Granting a preliminary injunction now would change rather than preserve the status quo. *See, e.g., Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1435 (7th Cir.1986) (purpose of a preliminary injunction is "to achieve a rough justice between the parties that will maintain the status quo pending trial"). Mr. Maron would be forced to find a new job and NENSCO would be forced to hire and train a new salesman. If defendants prevail at trial, it would be difficult for Mr. Maron to return to his position at NENSCO.

The court concludes that, wholly apart from the likelihood of success on the merits, the balance of harm tilts decidedly in defendants' favor. When weighted by the high likelihood that defendants, rather than plaintiff, will prevail at trial, the balance tilts even further in defendants' favor. *See American Hospital Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589, 593–94 (7th Cir.1986). Therefore, the preliminary injunction against Mr. Maron's continued employment with NENSCO, or any other of Bingham's competitors, is denied.

■ Bingham also seeks a preliminary injunction against defendants to prevent Mr. Maron from disclosing, and the corporate defendants from using, any confidential information obtained by Mr. Maron in the course of his employment at Bingham. The record now before the court does not show that Bingham's rubber formulations and manufacturing processes are trade secrets, nor does it sufficiently describe the steps taken by Bingham to maintain the confidentiality of this information. At the present stage, Bingham has not met its burden of showing that it has a protectable interest in any information that would justify a preliminary injunction against disclosure or use by defendants. *See, e.g., Reinhardt Printing Co. v. Feld*, 142 Ill.App.3d at 15–18, 96 Ill.Dec. at 103–04, 490 N.E.2d at 1308–09. Of course, once Bingham establishes that it has a protectable interest in certain information, it must then show

that the non-disclosure provision of the agreement is reasonable in terms of its time, territory and activity restrictions. *See Cincinnati Tool Steel Co. v. Breed*, 136 Ill.App.3d 267, 275–76, 90 Ill.Dec. 463, 468, 482 N.E.2d 170, 175 (2d Dist.1985). Bingham is free to renew this aspect of the motion for preliminary injunction upon a more fully developed record, including submissions under seal, if it chooses. If it should do so it also should respond to defendants' contention that an overly broad restriction is unenforceable in all respects.

## CONCLUSION

Plaintiff's motion for preliminary injunction is denied. Plaintiff may renew the motion, as to the disclosure and use of confidential information only, upon a more fully developed record.