A. B. DICK COMPANY, Plaintiff-Appellant, v. AMERICAN PRO-TECH *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—2066

Opinion filed May 21, 1987.—Modified on denial of rehearing September 24, 1987.

JIGANTI, J., specially concurring.

Levinson & Orloff, of Chicago (Michael R. Levinson, Mark A. Orloff, and James F. Petelle, of counsel), for appellant.

Malcolm W. Burnett, Jr., of Northbrook, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, the A. B. Dick Company, brought this action against defendants in the circuit court of Cook County. Defendants are three of plaintiff's former employees, Scott S. Regula, Joseph W. Secedi, and Mark Zoromski, and the competing company that they founded, American Professional Services, Inc., also known as American Pro-Tech. The trial court issued a temporary restraining order (TRO) enjoining Zoromski from violating his noncompetition agreement with plaintiff. The trial court subsequently dissolved the TRO and denied plaintiff's motion for a preliminary injunction.

We reverse and remand.

The record shows that plaintiff provides maintenance and repair services for copiers, microfiche equipment, and offset printing equipment. Plaintiff also manufactures and sells such equipment. Plaintiff sells its maintenance and repair services through branch offices in geographic territories.

Mark Dipple, the manager of plaintiff's Chicago suburban branch office, and defendant Zoromski testified at the preliminary injunction hearing. Dipple testified that his branch has executed between 800 and 1,000 verified preventive maintenance agreements with its customers. A maintenance agreement provides that plaintiff, in exchange for a fixed payment, will service the customer's equipment as needed for the term of the agreement and also will perform a specified number of preventive maintenance calls on the equipment. The agreement is for a one-year term and automatically renews from year to year unless the customer cancels it. Dipple testified that as a result, many of plaintiff's customers are long-standing, having had maintenance agreements from the time that they first bought copiers or duplicating equipment.

Plaintiff services its customers not only through maintenance agreements, but also on a time and material basis. Dipple testified that the Chicago suburban branch received between 35% and 40% of its total revenue from servicing customers under both maintenance agreements and on a time and material basis.

The record further shows that plaintiff employed defendant Zoromski as a "technical representative" at its Chicago suburban branch from mid-June 1981 to March 1986. Dipple testified that technical representatives perform all of the maintenance and service for plaintiff's maintenance agreement customers and its time and material customers. They sell maintenance agreements to customers and

convert time and material customers to maintenance agreement customers. Dipple further testified that technical representatives are the primary employees responsible for maintaining goodwill with plaintiff's customers.

Zoromski testified that he had no experience in servicing or marketing copiers or other duplicating equipment prior to his employment with plaintiff. As a result of his training and experience with plaintiff, Zoromski achieved the second highest level of technical representative, requiring of him a specified amount of training, experience, and certification in certain of plaintiff's products.

The record shows that plaintiff requires all of its technical representatives to sign noncompetition agreements. Dipple testified that these covenants protect plaintiff from unfair competitive disadvantages caused by former employees using its confidential information to solicit customers away from it and also protect plaintiff's longstanding customer relationships. Plaintiff required Zoromski to sign a noncompetition agreement. The restrictive covenant obligated Zoromski not to compete with plaintiff "in equipment repair and maintenance activity" during his employment and one year thereafter in the Chicago suburban branch territory. Zoromski testified that he understood the covenant when he voluntarily signed it.

Zoromski testified that he voluntarily left plaintiff on March 13, 1986. He subsequently joined American Pro-Tech, a competitor of plaintiff. Zoromski further testified that he solicited plaintiff's customers for whom he was responsible and to whom he was introduced through his employment with plaintiff.

Zoromski additionally testified that he knew that his employment at American Pro-Tech violated his noncompetition agreement with plaintiff. He further testified that he hoped, however, that plaintiff would not take any action to enforce the covenant. The record shows that plaintiff mailed to Zoromski a letter dated April 23, 1986, demanding that he abide by the covenant or else it would seek enforcement in court. Zoromski testified that he did not respond to plaintiff's letter and hoped that plaintiff would take no further action on the covenant.

According to Zoromski, at least three of plaintiff's customers whom he solicited cancelled their maintenance agreements with plaintiff and gave their business to American Pro-Tech. Dipple testified that this caused plaintiff an immediate loss of revenue. He further testified that Zoromski took confidential information and impaired the relationship between plaintiff and its customers. Dipple further testified that plaintiff might never know which time and material cus-

tomers Zoromski solicited away from it. For these reasons, Dipple explained, Zoromski's violation of the covenant injured plaintiff in ways that one cannot measure in money terms.

Plaintiff filed its complaint on June 10, 1986. On the next day, plaintiff sought a TRO against Zoromski, enjoining him from violating the restrictive covenant. The trial court issued the TRO pending a preliminary injunction hearing, which it held on July 1, 1986. At the close of plaintiff's case, the trial court denied plaintiff's motion for a preliminary injunction and dissolved the TRO. The trial court expressly found that Zoromski knowingly signed the covenant and that the covenant's time and geographic area limitations were well-defined and reasonable. The trial court also found, however, that plaintiff did not keep its customer information, in fact, confidential. The trial court lastly found that plaintiff did not produce evidence of irreparable injury; plaintiff, rather, only surmised that it was irreparably injured because it lost customers.

Plaintiff appeals pursuant to Supreme Court Rule 307(a) (87 Ill. 2d R. 307(a)). Plaintiff contends that: (1) the trial court's finding that it did not keep its customer information confidential was irrelevant, or alternately, against the manifest weight of the evidence; (2) the trial court ignored plaintiff's customer relations as a separate, protectable interest justifying a preliminary injunction; and (3) the trial court's finding that plaintiff did not produce evidence of irreparable injury was against the manifest weight of the evidence.

■■ ■ A party who seeks a preliminary injunction must establish that a certain and clearly ascertained right needs protection, irreparable injury will occur without the injunction, no adequate remedy at law exists, and that there is a probability of success on the merits. (*McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1050, 486 N.E.2d 1306, 1310; *Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 375, 422 N.E.2d 1034, 1036.) Further, to establish a probability of success on the merits, the petitioner need raise only a fair question as to the existence of the right claimed and that he will probably be entitled to injunctive relief if he proves his allegations. 97 Ill. App. 3d 373, 375, 422 N.E.2d 1034, 1036; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, 417.

■ The issuance or denial of a preliminary injunction is addressed to the trial court's sound discretion. A court of review should confine itself to a determination of whether the trial court has properly exercised its broad discretionary powers; each substantive issue should be considered only insofar as necessary to determine whether the trial court abused its discretion. A reviewing court will not dis-

turb the findings of the trial court unless they are against the manifest weight of the evidence. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 217-18, 363 N.E.2d 6, 9.

## I

■■ ■ Whether injunctive relief should issue here depends on the enforceability of the restrictive covenant. The covenant's enforceability depends on its reasonableness in terms of its effect upon the parties to the contract and its effect upon the public. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 218, 363 N.E.2d 6, 9, citing *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21, 24.) "The test of enforcement is whether the covenant *** is reasonably necessary for the protection of the employer's business against competition by methods commonly regarded as improper or unfair." (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 218, 363 N.E.2d 6, 9, cited in *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1051, 486 N.E.2d 1306, 1311.) Further, this determination depends on the facts and circumstances of each case. (138 Ill. App. 3d 1045, 1051, 486 N.E.2d 1306, 1311; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 691, 329 N.E.2d 414, 418.) "The covenant is unenforceable when its purpose is the prevention of competition *per se*." (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 218, 363 N.E.2d 6, 10.) After reviewing the record and the applicable law, we conclude that the restrictive covenant here is enforceable.

## A

Plaintiff contends that the trial court ignored its customer relations as a separate, protectable interest justifying a preliminary injunction. Plaintiff also contends that the trial court's finding that it did not keep its customer information confidential was irrelevant. We agree.

■ The record shows that the trial court denied plaintiff the preliminary injunction expressly because the court found that plaintiff's customer information was not confidential. Courts will not deem every alleged business interest protectable through a covenant not to compete. We have repeatedly recognized two separate, general situations where an employer's interest in its customers is proprietary and, therefore, legally protectable. First, courts will enforce a restrictive covenant if the employee acquired confidential information through his employment and subsequently attempted to use it for his or her own benefit. *Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 892, 480 N.E.2d 1273, 1279; *Morrison Metalweld Pro-*

*cess Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 376, 422 N.E.2d 1034, 1037.

Courts, however, will deem an employer's interest in its customers proprietary also if, by the nature of the business, the customer relationship is near-permanent and, but for the association with the employer, the employee would not have had contact with the customers. (*Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 892, 480 N.E.2d 1273, 1279.) Further, trade secrets or other confidential information are not necessary to establish a protectable interest under this test. *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1051, 486 N.E.2d 1306, 1311.

■ Our courts have used many objective factors in determining whether a near-permanent relationship exists between an employer and its customers. They are: (1) the number of years the employer required to develop the clientele, (2) the amount of money the employer invested in developing the clientele, (3) the degree of difficulty in developing the clientele, (4) the amount of personal customer contact by the employee, (5) the extent of the employer's knowledge of its clientele, (6) the length of time the customers have been associated with the employer, and (7) the continuity of the employer-customer relationship. 138 Ill. App. 3d 1045, 1051-53, 486 N.E.2d 1306, 1311-12.

Applying the above principles to the instant case, we conclude that the facts show a near-permanent relationship between plaintiff and its customers. The record contains uncontradicted evidence that plaintiff's maintenance agreement automatically renews from year to year unless the customer cancels it and that this system promotes long-standing, continuous customers. The record also contains uncontradicted evidence that Zoromski, as a technical representative, was the central contact between plaintiff and its customers. He was responsible for not only servicing the equipment of plaintiff's customers, but also responsible for supplying the reprographic needs of plaintiff's customers by selling them new equipment.

The second part of the test is whether, but for the association with the employer, the employee would not have had contact with the customers. The record contains uncontradicted evidence that Zoromski knew nothing about the reprographic industry when plaintiff hired him and that plaintiff trained and tested him, allowing him to rise to the second highest level of technical representative. Plaintiff provided Zoromski with the opportunity to develop close contacts with its customers, contacts which Zoromski otherwise would not have developed.

■ The combination of factors under the near-permanence analy-

sis, plus the fact that Zoromski would not have developed these customer contacts but for his employment, lead us to conclude that plaintiff does have a protectable interest in its customers. Consequently, the trial court's reliance on the existence of confidential information was misplaced. Therefore, we hold that, for purposes of a preliminary injunction, plaintiff raised a fair question as to the existence of a right needing protection.

## B

■ The trial court also expressly found that plaintiff produced no evidence of irreparable injury; plaintiff, rather, only surmised that it was irreparably injured because it lost customers. Plaintiff contends that this finding was error. We agree. Once a protectable interest is established, our courts presume that irreparable injury follows if the interest is not protected. *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1054, 486 N.E.2d 1306, 1313; *Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 380, 422 N.E.2d 1034, 1039.

■ ■ We lastly find that plaintiff has no adequate remedy at law. This court has defined an adequate remedy at law to be as "clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." (*K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021, 335 N.E.2d 156, 159.) Applying this principle to the instant case, we conclude that money damages would be inadequate. The record contains uncontradicted evidence that plaintiff might never know which time and material customers Zoromski took. It would be difficult to ascertain damages also because the effects of Zoromski's personal contact with plaintiff's customers would be more far-reaching than the time restriction set out in the covenant. *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1054-55, 486 N.E.2d 1306, 1313; *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 505, 392 N.E.2d 1148, 1153.

■ In summary, we find that plaintiff (1) has raised a fair question as to the existence of a certain and clearly ascertained right that needs protection; plaintiff has also established that (2) irreparable injury will occur without the injunction, (3) no adequate remedy at law exists, and (4) there is a probability of success on the merits. In addition, the trial court held that plaintiff voluntarily and knowingly signed the covenant and that the covenant's time and geographic area limitations were reasonable. We hold, therefore, that the trial court should have issued the preliminary injunction.

For the foregoing reasons, the order of the circuit court of Cook County denying plaintiff a preliminary injunction is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LINN, J., concurs.

JUSTICE JIGANTI, specially concurring:

While I agree with the majority, I would like to comment on the reasonableness of the post-employment restraint in this case.

The validity of a post-employment restraint is determined by the reasonableness of its terms and effect. It is reasonable if enforcement of the restraint will neither injure the public's interest in maintaining competition within the industry nor cause undue hardship to the employee by preventing him from earning a livelihood. (Restatement (Second) of Contracts sec. 188, comment *c* (1981).) Moreover, the restriction must not be greater than what is necessary to protect the employer. (Restatement (Second) of Contracts sec. 188, comment *d* (1981).) Specifically, the restraint must be reasonable as to activity, geographical scope, and time. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21; *Dryvit System, Inc. v. Rushing* (1985), 132 Ill. App. 3d 9, 477 N.E.2d 35; Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 674-81 (1960).) The agreement before us comports with the law because it is reasonable as to activity, geographical scope, and time.

The agreement here merely provides that for one year Zoromski may not engage "in equipment repair and maintenance activity which is competitive with that being conducted by A. B. Dick Company *** within the territory served by any A. B. Dick Company Branch Office to which [he has] been assigned during the twelve months immediately prior to the termination of my employment." The restraint does not, as in the case of a broader restraint of trade, prevent him from practicing his trade, nor does it deny him the right to engage in or be employed by a competitive business. It merely restricts Zoromski from servicing and repairing A. B. Dick equipment, as the A. B. Dick Company only services and repairs equipment which A. B. Dick Company itself manufactures. As a result, Zoromski may still service and repair any other type of equipment. Consequently, applying the principles stated above, it is evident that the activity restraint is carefully tailored and narrowly drawn to meet the interests of the employer

and the employee. (See, *e.g., Dryvit System, Inc. v. Rushing* (1985), 132 Ill. App. 3d 9, 13, 477 N.E.2d 35; Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 675 (1960).) Similarly, the geographical and time restrictions are appropriately limited to protect the employer's interest without unduly harming the employee. For these reasons, I think the restraint is reasonable.