# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**Reliable Fire Equipment Co. v. Arredondo, 2011 IL 111871**

---

| | |
|---|---|
| Caption in Supreme Court: | RELIABLE FIRE EQUIPMENT COMPANY, Appellant, v. ARNOLD ARREDONDO *et al.*, Appellees. |
| | |
| Docket No. | 111871 |
| | |
| Filed | December 1, 2011 |
| Rehearing denied | March 26, 2012 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The enforceability of employees' covenant not to compete should be judged by the three-prong test of reasonableness, of which the employer's legitimate business interest continues to be a part, and which looks to the totality of all of the circumstances, rather than focusing on named specific factors. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Bonnie M. Wheaton, Judge, presiding. |
| | |
| Judgment | Judgments reversed; cause remanded. |

Counsel on
Appeal

Christopher P. Banaszak and Robert S. Driscoll, of Reinhart Boerner Van Deuren s.c., of Milwaukee, Wisconsin (Robert G. Black, of Naperville, of counsel), for appellant.

Tom P. Gregory, Jack C. Lai and Maria V. Vasos, of Gregory & Lai, of Barrington, for appellees.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Reliable Fire Equipment Company (Reliable), filed a complaint in the circuit court of Du Page County against defendants Arnold Arredondo, Rene Garcia, and High Rise Security Systems, LLC (High Rise). Reliable claimed, *inter alia*, a breach of a noncompetition restrictive covenant. At the close of a bench trial on this claim, the circuit court ruled that the covenant was unenforceable. A divided panel of the appellate court upheld the circuit court's order. 405 Ill. App. 3d 708. We allowed Reliable's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We now reverse the judgment of the appellate court and the order of the circuit court, and remand the cause to the circuit court for further proceedings.

¶ 2                              I. BACKGROUND

¶ 3    Founded in 1955, Reliable sells, installs, and services portable fire extinguishers and a variety of fire suppression and fire alarm systems. Reliable designs or engineers the systems to fit the needs of industrial, commercial, and retail businesses; hospitals and schools; and all manner of nonresidential buildings. Reliable has approximately 100 employees, including salespersons, installers, and service technicians. Reliable does the majority of its business in the Chicago metropolitan area, northern Indiana, and southern Wisconsin.

¶ 4    In April 1992, Reliable hired Garcia as a systems technician and, approximately one year later, offered Garcia a sales position, which he accepted. Sometime in 1997, Reliable required all employees to sign noncompetition restrictive covenants. In November 1997 Garcia signed his noncompetition agreement. In November 1998, Reliable hired Arredondo as a salesperson. Approximately one week later, Arredondo signed his noncompetition agreement. In their agreements, Arredondo and Garcia each promised, *inter alia*, not to compete with Reliable during their employment and for one year after their termination from employment in Illinois, Indiana, or Wisconsin. Arredondo and Garcia further promised not to solicit any sales or referrals from Reliable customers or referral sources, or to solicit

Reliable employees to leave their employment with Reliable.

¶ 5     High Rise's stated purpose was to supply engineered fire alarm and related auxiliary systems throughout the Chicago metropolitan area. In March 2004, Arredondo was seeking financing for High Rise. In April 2004, High Rise was formed as a limited liability corporation. High Rise's managers included Arredondo and Garcia. On August 17, 2004, they signed an operating agreement for High Rise.

¶ 6     In August 2004, Ernest Horvath, Reliable's founder and chairman of the board, became concerned that Arredondo and Garcia were planning to compete with Reliable. He asked them and another employee whether they were going to start their own business, and each denied it. On September 1, 2004, Arredondo resigned from Reliable effective September 15. On October 1, 2004, Reliable fired Garcia on suspicion of competition.

¶ 7     In December 2004, Reliable filed its original, multiple-count complaint against defendants. In count III of its second amended complaint, Reliable alleged as follows. The company had entered into valid and enforceable employment agreements with Arredondo and Garcia. In violation of the restrictive covenants contained therein, Arredondo and Garcia engaged in sales activities and provided services to Reliable customers, and solicited referrals from Reliable's referral sources. Also, Arredondo and Garcia solicited several named Reliable employees to leave their employment with Reliable. As a result of their breach of contract, Reliable alleged damages in excess of $400,000.

¶ 8     Defendants filed a first amended counterclaim that sought, *inter alia*, a declaration that the restrictive covenants were unenforceable. In November 2007, the circuit court held a bench trial on defendants' declaratory judgment action. At the close of the evidence, the court ruled that the restrictive covenants were unenforceable. The court concluded that Reliable failed to prove the existence of a legitimate business interest that justified enforcement of the covenants.[1]

¶ 9     A sharply divided panel of the appellate court affirmed. 405 Ill. App. 3d 708. The lead opinion upheld the circuit court's conclusion that Reliable did not have a legitimate business interest that justified the enforcement of the restrictive covenants. 405 Ill. App. 3d at 743-48. The special concurrence agreed that the circuit court's conclusion should be upheld, but disagreed with the reasoning of the lead opinion. 405 Ill. App. 3d at 748 (Hudson, J., specially concurring). The dissent agreed with the reasoning of the special concurrence and, based thereon, would reverse and remand for further proceedings. 405 Ill. App. 3d at 753, 759 (O'Malley, J., dissenting). Reliable now appeals.

¶ 10                                II. ANALYSIS
¶ 11                            A. Standard of Review
¶ 12     Initially, Reliable observes that Illinois courts have described different standards of

---

[1]The circuit court conducted a jury trial on Reliable's remaining claims. At the close of Reliable's case in chief, the court granted defendants' motion for a directed verdict, and defendants voluntarily dismissed their counterclaim.

review in restrictive covenant cases. It is traditionally stated that the enforceability of a restrictive covenant is a question of law, the determination of which is reviewed *de novo* (*Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 63 (2006)), based on the facts in each particular case. See *Tarr v. Stearman*, 264 Ill. 110, 118-19 (1914); *Lanzit v. J.W. Sefton Manufacturing Co.*, 184 Ill. 326, 330 (1900). In the case at bar, the circuit court held a bench trial to determine the enforceability of the postemployment restrictive covenant. Generally, the standard of review in a bench trial is whether the order or judgment is against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002); *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 433 (1991).

¶ 13    However, the case at bar calls for only one standard of review. The issue presented for review is not whether the circuit court's order is supported by sufficient evidence, thereby necessitating the manifest weight of the evidence standard with its attendant deference. See *Schulenburg v. Signatrol, Inc.*, 37 Ill. 2d 352, 356 (1967). Rather, the issue here is whether the circuit court applied the correct legal test to the evidence presented. This is a question of law which is reviewed *de novo*. *In re A.H.*, 207 Ill. 2d 590, 593 (2003).

¶ 14                    B. The Three Basic Components of Reasonableness

¶ 15    Two panels of our appellate court have questioned whether Illinois recognizes the legitimate business interest of the promisee as a requirement of an enforceable restrictive covenant. We now take the opportunity to correct this misconception.

¶ 16    This court long ago explained that a contract in total and general restraint of trade was "undoubtedly" void because it "necessarily" injures the public at large and the individual promisor. Such a contract deprives the public of the industry of the promisor, and deprives the promisor of the opportunity to pursue an occupation and thereby support his or her family. *Hursen v. Gavin*, 162 Ill. 377, 379-80 (1896). However, it is equally established that a restrictive covenant will be upheld if it contains a reasonable restraint and the agreement is supported by consideration. *Storer v. Brock*, 351 Ill. 643, 647 (1933) (collecting cases); accord 6 Richard A. Lord, Williston on Contracts § 13:1, at 7-11 (4th ed. 2009); Restatement (Second) of Contracts § 186 & cmt. a (1981).

¶ 17    "The modern, prevailing common-law standard of reasonableness for employee agreements not to compete applies a three-pronged test." *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999). A restrictive covenant, assuming it is ancillary to a valid employment relationship, is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public. *Id.*; Restatement (Second) of Contracts § 187 cmt. b, § 188(1) & cmts. a, b, c (1981).[2] Further, the extent of the employer's legitimate business interest may be limited by type of activity, geographical area, and time. Restatement (Second) of Contracts § 188 cmt. d (1981). This

---

[2]Since ancillarity is required, one may describe the test of reasonableness as having four elements, expressly listing ancillarity, instead of three elements, which assumes ancillarity. See 15 Grace McLane Giesel, Corbin on Contracts § 80.6, at 69 (rev. ed. 2003).

court long ago established the three-dimensional rule of reason in Illinois and has repeatedly acknowledged the requirement of the promisee's legitimate business interest down to the present day.

¶ 18 In *Hursen v. Gavin*, 162 Ill. 377 (1896), after reciting the general principle that contracts in total and general restraint of trade are void as against public policy, this court stated:

"But a contract, which is only in partial restraint of trade, is valid, provided it is reasonable and has a consideration to support it. [Citations.] The restraint is reasonable, *when it is such only as to afford a fair protection to the interests of the party, in whose favor it is imposed. If the restraint goes beyond such fair protection, it is oppressive to the other party and injurious to the interests of the public, and, consequently, void upon the ground of public policy.*" (Emphasis added.) *Id*. at 380.

This court held that the restrictive covenant was valid, explaining: "One element of the value of the business transferred by appellant to appellee was the probability, that the customers of the former would continue to trade with the latter ***. *** The limitation here did not go beyond what was necessary for the protection of appellee in the prosecution of the business purchased by him, and was, therefore, reasonable." *Id.* at 382. In *Hursen*, as in a prior case, *Linn v. Sigsbee*, 67 Ill. 75 (1873), this court applied what came to be the Restatement's three-component test of reasonableness: given that the restrictive covenant was ancillary to the sale of the business, (1) the restraint was necessary to protect the legitimate interest of the promisee; (2) the restraint did not impose a hardship on the promisor or the public; and (3) the extent or scope of the restraint was otherwise reasonable.

¶ 19 In *Bauer v. Sawyer*, 8 Ill. 2d 351 (1956), several physicians were members of a Kankakee medical partnership. The partnership agreement provided in pertinent part that if a member withdrew or terminated association with the partnership, that person would not practice medicine within a 25-mile radius of Kankakee for five years. *Id*. at 353-54. This court held that an injunction should issue against a physician who left the partnership. This court recited the general principles that were well established by that time: "In determining whether a restraint is reasonable it is necessary to consider whether enforcement will [1] be injurious to the public or [2] cause undue hardship to the promisor, and [3] whether the restraint imposed is greater than is necessary to protect the promisee. [Citations.]" *Id.* at 355. In addition, the time and territory limitations must be reasonable. *Id*. This court considered each of the three recognized elements of reasonableness. In so doing, the court carefully and specifically examined the interest of the partnership-promisee. The court agreed with the principle that members of a partnership have a legitimate business interest in protecting themselves against the competition of an outgoing partner, and that a restrictive covenant to that effect is not opposed to public policy. *Id.* at 356-57 (collecting authorities).

¶ 20 In *House of Vision, Inc. v. Hiyane*, 37 Ill. 2d 32 (1967), an employer brought an action to enforce an employee's covenant not to compete. This court began its analysis of the restrictive covenant by discussing the employer's legitimate business interest: "*Here the interest to be protected was the interest of the plaintiff in its customers.*" (Emphasis added.) *Id*. at 37-38. Only after this court articulated the employer's legitimate business interest did it consider the reasonableness of the time and territory limitations, or the lack thereof. *Id.* at

38-39.

¶ 21    In *Cockerill v. Wilson*, 51 Ill. 2d 179 (1972), the narrow issue presented was whether the time and territory limitations of the restrictive covenant were greater than necessary to protect the plaintiff. *Id.* at 183. This court began its analysis of the provision by reciting the three components of reasonableness: injury to the public; undue hardship on the promisor; and the need for the protection of the limitation by the promisee. This court recognized that "the interest plaintiff sought to protect by the covenant was his interest in his clients." *Id.* at 184.

¶ 22    In *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52 (2006), plaintiff-physicians sought a declaratory judgment that the restrictive covenants in their employment agreements were void. Defendants, the employer-clinic and its owner, counterclaimed for declaratory, injunctive, and other relief. The circuit court concluded that the geographic restriction was reasonable, but that the activity restriction–the practice of medicine–was greater than necessary to protect the defendants' interests, which was cardiology. The appellate court reversed, concluding that the activity restriction, within the narrowly drawn geographic limits, would not cause undue hardship and was not greater than necessary to protect the defendants' interests. *Id.* at 61-62.

¶ 23    Before this court, plaintiffs contended, *inter alia*, that their restrictive covenants were unreasonably overbroad in their time and activity restrictions. *Id.* at 75. In upholding the restrictive covenants, this court expressly repeated the three established components of reasonableness:

> "[T]his court has a long tradition of upholding covenants not to compete in employment contracts involving the performance of professional services when the limitations as to time and territory are not unreasonable. [Citations.] In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, *and whether the restraint imposed is greater than is necessary to protect the promisee*. [Citation.]" (Internal quotation marks omitted.) (Emphasis added.) *Id.* at 76.

In upholding the restrictive covenant, this court stated: "*Thus, we find that the restraint on the practice of medicine, here, was not greater than necessary to protect the defendants' interests.* This is particularly so because the restriction on plaintiffs is in effect only within a narrowly circumscribed area of a large metropolitan area." (Emphasis added.) *Id.* at 77.

¶ 24    This discussion shows that this court, from as far back as *Linn* and *Hursen*, through cases such as *Bauer* and *House of Vision*, and down to the present day in *Mohanty*, has repeatedly recognized the three-dimensional rule of reason, specifically including the element of the legitimate business interest of the promisee. However, in *Sunbelt Rentals, Inc. v. Ehlers*, 394 Ill. App. 3d 421 (2009), a panel of our appellate court concluded that the test of reasonableness of a restrictive covenant is something other than the prevalent three-prong inquiry long established by this court.

¶ 25    In *Sunbelt*, Ehlers was a sales representative for Sunbelt. He had entered into an employment agreement containing a restrictive covenant providing that he would not compete with Sunbelt within a 50-mile radius of any of Sunbelt's stores for one year after

the date of the expiration or termination of his employment. Ehlers resigned from Sunbelt and, within the one-year restriction, accepted a position with one of Sunbelt's competitors. Sunbelt sued Ehlers and his new employer, seeking injunctive relief. *Sunbelt*, 394 Ill. App. 3d at 423-25.

¶ 26    The circuit court enforced the restrictive covenant, finding that the time and territory limitations of the restrictive covenant were reasonable, but did not apply the legitimate business interest test as interpreted by the appellate court. *Id.* at 425. The appellate court briefly surveyed only some of the above-discussed cases from this court and concluded: "Accordingly, because (1) the Supreme Court of Illinois has never embraced the 'legitimate-business-interest' test and (2) its application is inconsistent with the supreme court's long history of analysis in restrictive covenant cases, we reject the 'legitimate-business-interest' test." *Id.* at 431. The *Sunbelt* court prescribed that a court, when presented with the issue of whether a restrictive covenant should be enforced, should evaluate its reasonableness based only on its time and territory restrictions. "Thus, this court need not engage in an additional discussion regarding the application of the 'legitimate-business-interest' test because that test constitutes nothing more than a judicial gloss incorrectly applied to this area of law by the appellate court." *Id.*

¶ 27    In the present case, while the appellate court justices disagreed amongst themselves concerning the proper *application* of the legitimate business interest component of the rule of reason, each member of the panel rejected the conclusions of *Sunbelt*. 405 Ill. App. 3d at 723; *Id.* at 749 (Hudson, J., specially concurring); *Id.* at 755 (O'Malley, J., dissenting). We do likewise. *Sunbelt* overlooked or misapprehended this court's above-discussed case law that established the three-prong inquiry into the reasonableness of restrictive covenants. Contrary to this authority, *Sunbelt* "disallows inquiry into whether the employer has an interest other than suppression of ordinary competition." *Id.* at 723 (lead op.). "*Sunbelt* seems to say that the employer's legitimate interest is whatever the parties agree to in the contract. [Citation.] If the employer's legitimate interest is a matter of contract only, then the quoted language in the above supreme court cases would be superfluous." *Id.* at 733.

¶ 28    Specifically, the appellate court in *Sunbelt* misread this court's *Mohanty* decision in support of its erroneous conclusion. The appellate court discussed *Mohanty* and even quoted *Mohanty*'s recitation of the three-prong rule of reason. *Sunbelt*, 394 Ill. App. 3d at 430 (quoting *Mohanty*, 225 Ill. 2d at 76). However, the appellate court observed that the *Mohanty* court did not mention the employer's legitimate business interest in upholding that restrictive covenant. Therefore, the appellate court concluded that the legitimate business interest component of the three-prong rule of reason was no longer valid in Illinois, if it ever was. *Sunbelt*, 394 Ill. App. 3d at 430-31.

¶ 29    We emphatically disagree. Even a cursory review of *Mohanty* refutes this reasoning. The plaintiff-physicians contended that the restrictive covenants were unreasonable only because their activity and temporal restrictions were overbroad. *Mohanty*, 225 Ill. 2d at 64. They never challenged the defendant-employers' legitimate business interest, thereby conceding the point. Further, this court expressly recited the legitimate interest of the promisee as a component of the three-prong rule of reason. Indeed, *Mohanty*'s recognition of the legitimate business interest of the promisee was unanimous. The special concurrence observed that

-7-

plaintiffs did not dispute that defendants had "a clearly ascertainable right in need of protection." *Id.* at 80 (Karmeier, J., specially concurring, joined by Garman, J.). Even the dissent recognized "the legitimate business interests that employers such as defendants wish to protect." *Id.* at 93 (Freeman, J., dissenting). Lastly, in upholding the restrictive covenant, this court stated: "*Thus, we find that the restraint on the practice of medicine, here, was not greater than necessary to protect defendants' interests*." (Emphasis added.) *Id.* at 77 (majority op.). *Sunbelt* is hereby overruled.

¶ 30　　Further, in *Steam Sales Corp. v. Summers*, 405 Ill. App. 3d 442 (2010), the appellate court propagated *Sunbelt*'s error: "As opposed to the legitimate-business-interest test, *Sunbelt* cites the two-prong reasonableness test appearing in *Mohanty*, the most recent supreme court case addressing restrictive covenants." *Id.* at 457. The court in *Steam Sales* goes on to discuss "*Mohanty*'s reasonableness test versus the legitimate-business-interest test." *Id.* To the extent that *Steam Sales* characterizes *Mohanty* as deviating from the above-described general three-prong rule of reason, *Steam Sales* is hereby overruled. Based on this court's extensive precedent, we continue to recognize the legitimate business interest of the promisee as a long-established component in the three-prong rule of reason.

¶ 31　　　　　　　　C. Application of Employer's Legitimate Business Interest

¶ 32　　Before this court, Reliable contends that the lower courts misapplied the legitimate business interest of the promisee, as a component of the three-prong rule of reason, in assessing the enforceability of the noncompetition agreement. The separate appellate court opinions in the present case debated two approaches to applying this component. We assess these analytical schemes.

¶ 33　　Certainly, the prevalent three-prong inquiry "fleshes out the legal standard [of reasonableness] a bit." *Consultants & Designers, Inc. v. Butler Service Group, Inc.*, 720 F.2d 1553, 1557 (11th Cir. 1983). However, the three-prong test of reasonableness remains "unstructured." *Reddy v. Community Health Foundation of Man*, 298 S.E.2d 906, 911 (W. Va. 1982). Notably, "[p]recedents are of less than usual value because the question of reasonableness must be decided on an *ad hoc* basis. There is no inflexible formula." (Internal quotation marks omitted.) *Consultants & Designers, Inc.*, 720 F.2d at 1557; accord *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 968 F.2d 1463, 1470 (1st Cir. 1992) (collecting authorities); Restatement (Second) of Contracts § 188 cmt. a, at 42 (1981) ("No mathematical formula can be offered for this process").

¶ 34　　Under some circumstances, "a promise to refrain from competition is a natural and reasonable means of protecting a legitimate interest of the promisee." Restatement (Second) of Contracts § 188 cmt. b (1981). In the case of a postemployment restraint, where the employer-promisee exacts from the employee a promise not to compete after termination of the employment, the restraint is *usually* justified on the ground that the employer has a legitimate business interest in restraining the employee from appropriating the employer's (1) confidential trade information, or (2) customer relationships. Included within these precepts are several factors for a court to consider. *Id.* cmts. b, g; accord Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 651-74 (1960).

¶ 35    Beyond this recognized description of the legitimate business interest of the employer, some courts have endeavored to "further explain what must be considered." 15 Grace McLane Giesel, Corbin on Contracts § 80.6, at 70 (rev. ed. 2003). Such attempts usually collapse into lists of factors. See, *e.g.*, *Chambers-Dobson, Inc. v. Squier*, 472 N.W.2d 391, 400 (Neb. 1991) (and cases cited therein); *Arthur Murray Dance Studios of Cleveland, Inc. v. Witter*, 105 N.E.2d 685, 694-99 (Ohio C.P. 1952) (listing factors). Further, compilers of such lists repeat there is no exact formula required in a court's analysis. "The factors or considerations to be used in that balancing test are not weighted; that is, there is no prescribed method by which more or less weight is assigned to each factor to be considered in the balancing test ***." *Chambers-Dobson*, 472 N.W.2d at 400. Also, compilers of such lists repeat that the factors therein are not exclusive. *Arthur Murray*, 105 N.E.2d at 695.

¶ 36    However, our appellate court *did* develop a formula for assessing the legitimate business interest of the promisee. Further, some of the factors considered in this formula were highly weighted, if not conclusive. In *Nationwide Advertising Service, Inc. v. Kolar*, 28 Ill. App. 3d 671 (1975), plaintiff advertising agency sought to enforce a restrictive covenant against its former employee and appealed the denial of enforcement. Plaintiff contended that "under Illinois law an employer such as it had a legitimate business interest in its customers which was subject to protection through enforcement of an employee's covenant not to compete." *Id.* at 673.

¶ 37    In summarizing the principles on which the court based its earlier analysis in the same case (*Nationwide Advertising Service, Inc. v. Kolar*, 14 Ill. App. 3d 522 (1973)), the *Kolar* court wrote as follows:

> "[A]n employer's business interest in customers is not always subject to protection through enforcement of an employee's covenant not to compete. Such interest is deemed proprietary and protectable only if certain factors are shown. A covenant not to compete will be enforced if [1] the employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit. [Citation.] An employer's interest in its customers also is deemed proprietary if, [2] by the nature of the business, the customer relationship is near-permanent and but for his association with plaintiff, defendant would never have had contact with the clients in question. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179 ***; *Canfield v. Spear* (1969), 44 Ill. 2d 49 ***.) Conversely, a protectable interest in customers is not recognized where the customer list is not secret (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32 ***), or where the customer relationship is short-term and no specialized knowledge or trade secrets are involved." *Kolar*, 28 Ill. App. 3d at 673.

Although the *Kolar* court cited this court's decisions in *Cockerill*, *House of Vision*, and *Canfield* as authority for this formulation of a legitimate business interest "test," none of those cases used that test in their respective analyses. Rather, each decision was based on the totality of its own facts.

¶ 38    During the 36 years subsequent to *Kolar*, our appellate court has variously set forth this "test" as the *sine qua non* for the enforcement of a covenant not to compete. See, *e.g.*, *Hanchett Paper Co. v. Melchiorre*, 341 Ill. App. 3d 345, 351 (2003); *Dam, Snell & Taveirne,*

*Ltd. v. Verchota*, 324 Ill. App. 3d 146, 151-52 (2001); *Carter-Shields v. Alton Health Institute*, 317 Ill. App. 3d 260, 268 (2000); *Springfield Rare Coin Galleries, Inc. v. Mileham*, 250 Ill. App. 3d 922, 929-30 (1993); *A.B. Dick Co. v. American Pro-Tech*, 159 Ill. App. 3d 786, 792-93 (1987); *Reinhardt Printing Co. v. Feld*, 142 Ill. App. 3d 9, 15-16 (1986); see also *Outsource International, Inc. v. Barton*, 192 F.3d 662, 666 (7th Cir. 1999) (applying Illinois law); *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 947 (7th Cir. 1994) ("But Illinois, unlike Delaware, limits the interests that a covenant not to compete may protect to trade secrets, confidential information, and relations with 'near-permanent' customers of the employer"). Even further, and exemplary of this erroneous proliferation of templates, our appellate court has developed two alternative "tests" to determine its "near-permanence" prong of its conclusive two-prong test for a promisee's legitimate business interest. Some courts analyze the near-permanent relationship according to seven objective factors. See, *e.g.*, *Hanchett Paper*, 341 Ill. App. 3d at 352 (quoting *Audio Properties, Inc. v. Kovach*, 275 Ill. App. 3d 145, 148-49 (1995)); *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557, 572-73 (1992). In contrast, other courts follow a "nature of the business" test. See, *e.g.*, *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 142 (1997) (collecting cases).

¶ 39   In the present case, the lead opinion in the appellate court applied these "tests" in upholding the circuit court's ruling that the noncompetition restrictive covenant was unenforceable. 405 Ill. App. 3d at 743-48. The specially concurring justice agreed with the circuit court's result, but based on the totality of the circumstances presented in the record. He stated: "Analyzing such covenants with reference to the totality of the circumstances to determine if an employer has a protectable interest, as opposed to utilizing the typical rigid version of the legitimate-business-interest test, will lead to results more grounded in the true considerations of a given case." *Id.* at 751 (Hudson, J., specially concurring).[3] We agree.

¶ 40   To the extent the appellate court's "tests" are conclusive, they are plainly contrary to the above-described general principles pertaining to the promisee's legitimate business interest based on the totality of the circumstances of the particular case. The understandable temptation is to view exemplary facts presented in particular cases as the outermost boundary of the inquiry. Thus, precedent is set to guide future cases. However, "if it were possible to make a complete list today, human ingenuity would render the list obsolete tomorrow." *Arthur Murray*, 105 N.E.2d at 695.

¶ 41   Parties have long turned to the common law to argue for or against the enforceability of noncompetition agreements. "There is, therefore, an especially well-developed and significant body of judicial decisions applying the general rule of reason *** to such promises." Restatement (Second) of Contracts § 187 cmt. a (1981). The common law, based on reason and experience, has recognized several factors and subfactors within the

---

[3]Another side-by-side comparison of the appellate court's application of the legitimate business interest test, with the application of the promisee's legitimate business interest as a component of the rule of reason, is found in the majority opinion and special concurrence in *A.B. Dick*, 159 Ill. App. 3d at 792-94; *Id.* at 795 (Jiganti, J., specially concurring).

component of the promisee's legitimate business interest.

¶ 42    However, we hold that such factors are only nonconclusive aids in determining the promisee's legitimate business interest, which in turn is but one component in the three-prong rule of reason, grounded in the totality of the circumstances. "Each case must be determined on its own particular facts. [Citations.] Reasonableness is gauged not just by some but by *all* of the circumstances. [Citations.] The same identical contract and restraint may be reasonable and valid under one set of circumstances, and unreasonable and invalid under another set of circumstances." (Emphasis in original.) *Arthur Murray*, 105 N.E.2d at 692-93. Accord Restatement (Second) of Contracts § 186 cmt. a, § 188 cmt. g. We expressly observe that appellate court precedent for the past three decades remains intact, but only as nonconclusive examples of applying the promisee's legitimate business interest, as a component of the three-prong rule of reason, and not as establishing inflexible rules beyond the general and established three-prong rule of reason.

¶ 43    In sum, the legitimate business interest test is still a viable test to be employed as part of the three-prong rule of reason to determine the enforceability of a restrictive covenant not to compete. However, the two-factor test created in *Kolar*, in which a near-permanent customer relationship and the employee's acquisition of confidential information through his employment are determinative, is no longer valid. Rather, we adopt the position of Justice Hudson's special concurrence, which is: whether a legitimate business interest exists is based on the totality of the facts and circumstances of the individual case. Factors to be considered in this analysis include, but are not limited to, the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions. No factor carries any more weight than any other, but rather its importance will depend on the specific facts and circumstances of the individual case.

¶ 44                                    D. Remand

¶ 45    Before this court, Reliable reasons: "If the circuit court applied the wrong legal standard to the facts of the case, then remand is the proper remedy to give the court an opportunity to apply the correct test." The circuit court ruled that the noncompetition restrictive covenant was unenforceable. The appellate court special concurrence agreed with the lead opinion that the circuit court ruling should be upheld, but based on the totality of the circumstances presented in the record. 405 Ill. App. 3d at 752 (Hudson, J., specially concurring). While the dissent agreed with the special concurrence's view of the promisee's legitimate business interest, he would have reversed and remanded for further proceedings. *Id.* at 759 (O'Malley, J., dissenting).

¶ 46    "When a case is tried under an incorrect theory of law the appropriate action is to reverse the judgment and remand for a new trial." *Sparling v. Peabody Coal Co.*, 59 Ill. 2d 491, 496 (1974). In the present case, the parties presented their evidence and fashioned their arguments based on the appellate court's rigid and preclusive legitimate business interest test. The circuit court conscientiously applied this test in ruling that the noncompetition restrictive covenant was unenforceable. "Particularly where, as here, the ultimate issue–the

reasonableness of the agreements–turns upon the totality of the facts and circumstances surrounding them, the parties must be given a full opportunity to develop the necessary evidentiary record." *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 304 N.W.2d 752, 757 (Wis. 1981). We observe that the circuit need not conduct an entirely new evidentiary hearing, but rather may allow the parties to supplement the existing record with any additional evidence and argument pertaining to the totality of the circumstances.

¶ 47                                    III. CONCLUSION

¶ 48        For the foregoing reasons, the judgment of the appellate court and the order of the circuit court of Du Page County are reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.


¶ 49        Judgments reversed;

¶ 50        cause remanded.