In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 14-2132 & 14-2243

INSTANT TECHNOLOGY LLC,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

ELIZABETH DEFAZIO, *et al.,*

*Defendants-Appellees, Cross-Appellant (DeFazio only).*

---

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 491 — **James F. Holderman**, *Judge.*

---

ARGUED MAY 22, 2015 — DECIDED JULY 14, 2015

---

Before EASTERBROOK, WILLIAMS, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Instant Technology LLC is an information-technology staffing firm. It helps organizations looking to hire tech workers find tech workers looking for jobs. Instant's employees work in either "recruiting" or "sales": the first group finds qualified candidates and the second group pitches them to the hiring organizations. Both sets of employees sign agreements in which they promise

not to solicit business from Instant's clients, not to recruit Instant's employees to other jobs, and not to disclose the firm's sensitive information to outsiders.

Elizabeth DeFazio served as Instant's Vice President for Sales and Operations until January 2012, when she was fired. She already had a position lined up at Connect Search LLC, a new tech-staffing firm she was in the process of co-founding; she began working there immediately, along with several coworkers she persuaded to jump ship with her. Connect Search opened its doors in February 2012 and won business from several of Instant's recent clients.

Instant brought this suit in federal district court against DeFazio and four of the other defectors (among other people) for breaching the restrictive covenants in their employment agreements (among other asserted misdeeds). DeFazio filed a counterclaim alleging that Instant breached a contract by shortchanging her on a bonus. Some of Instant's claims arose under the federal Computer Fraud and Abuse Act, 18 U.S.C. §1030; the district court heard those claims under its federal question jurisdiction, and it exercised supplemental jurisdiction over the rest of the case. 28 U.S.C. §§ 1331, 1367. After a bench trial the court concluded that no one is liable to anyone else. 40 F. Supp. 3d 989 (N.D. Ill. 2014). Instant and DeFazio filed cross appeals.

Instant maintains that the defendants broke their promises in three ways: DeFazio poached employees from Instant in violation of the covenant not to recruit; the defendants pitched candidates to Instant's clients in violation of the covenant not to solicit; and they pilfered Instant's information about specific tech workers and shared it with Connect Search in violation of the covenant not to disclose. The dis-

trict court rejected each contention. It found that defendants did not leak or otherwise misuse Instant's proprietary data. 40 F. Supp. 3d at 1014–15. Instant asks us to set that finding aside, but it wasn't clearly erroneous, so we cannot. Fed. R. Civ. P. 52(a)(6). Instant hired a forensic computer technician to dig up dirt on DeFazio and her confederates, but he discovered no evidence that any defendant accessed Instant's information after leaving the firm. The defendants *must* have used its information about job candidates, Instant presses, because Connect Search got off the ground so quickly; DeFazio left at the beginning of January, and her new firm began operations toward the end of February. But the district court found that technology professionals looking for work don't keep their names or qualifications secret; they publish their credentials on websites such as LinkedIn and respond enthusiastically to cold calls by recruiters. A month and a half would have been plenty of time for a legitimate start—at least, the district judge did not clearly err in finding that it would have been.

Defendants admitted breaching the covenants not to solicit and not to recruit, but the court held those provisions unreasonable and unenforceable under Illinois law. 40 F. Supp. 3d at 1013–14. In Illinois a restrictive covenant in an employment agreement is valid only if it serves a "legitimate business interest". *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871 ¶17 (S. Ct. Ill. Dec. 3, 2011). The district court concluded that neither covenant did. Tech-staffing firms do not build relationships with clients that would justify restricting their employees from setting out on their own. In fact, the court found, clients show barely any loyalty to the firms they use; larger organizations routinely request service from five to ten firms at once, and a firm can expect compen-

sation only a tenth of the time it recommends a candidate for a position. 40 F. Supp. 3d at 1004, 1012. Employees of tech-staffing firms also aren't exposed to important private information. Instant did keep data about qualified IT workers and maintained lists of candidates likely to hit the market soon. But (as we've already discussed) the court found that anybody can access most of that information with little work, and, given that most good candidates find jobs quickly, lists of active candidates have short shelf lives. *Id*. at 1012–13. Instant also could not rely on its interest in a "stable workforce" to justify a covenant not to recruit. Its workforce was never stable; 77% of the people who worked there two years before the trial left in the interim. *Id*. at 1013–14.

Instant now argues that the district court performed the wrong analysis. *Reliable Fire* holds that the existence of legitimate business interests turns on the "totality of the circumstances". 2011 IL 111871 at ¶¶ 40–43. The district court discussed only three circumstances: the strength of the relationships between Instant's employees and its clients, the confidentiality of Instant's data, and the stability of Instant's workforce. That's not the totality of the circumstances, Instant insists.

Instant's first problem is that it doesn't identify any circumstance that the district court should have considered but didn't. It instead argues that the court misjudged the circumstances it did consider, pointing to testimony that Instant's sales force had to woo clients at dinners and that Instant paid money to build its candidate lists. But the defendants presented heaps of contradictory testimony. The district court was entitled to find the way it did.

Instant's second problem is more fundamental. It thinks "totality of the circumstances" means "all of the circumstances"—that a district court commits reversible error by limiting its discussion to those circumstances it deems material. That's an understandable reading given the slippery formulation, but it cannot be correct. "All" circumstances is a lot of circumstances—indeed, infinitely many. Few matter to the question whether a restrictive covenant is reasonable, and even fewer matter enough that it would be a reversible error for the district court to omit them from its findings. The court didn't discuss the price of eggs in Guatemala, but that does not require a remand.

A "totality of the circumstances" standard is a grant of discretion. *Milwaukee Chapter of the N.A.A.C.P. v. Thompson*, 116 F.3d 1194, 1197 (7th Cir. 1997). If the trier of fact identifies the right standard and considers the most pertinent information, a reviewing court should not second-guess its conclusions unless they are clearly wrong. Here the district court identified the standard from *Reliable Fire*—40 F. Supp. 3d at 1012 ("The existence of a legitimate business interest turns on *the totality of the circumstances of each case*") (emphasis added)—and analyzed facts that courts in Illinois have identified as important. See, e.g., *Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 141–42 (2d Dist. 1997) (permanence of relationships with customers and access to confidential information affect the enforceability of restrictive covenants); *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557, 573–75 (1st Dist. 1992) (same). Its conclusions were permissible.

Making validity turn on "the totality of the circumstances"—which can't be determined until litigation years after

the events—makes it hard to predict which covenants are enforceable. If employers can't predict which covenants courts will enforce, they will not make investments that may depend on covenants' validity, and they will not pay employees higher wages for agreeing to bear potentially costly terms. Both employers and employees may be worse off as a result. Risk-averse employees who hope that their covenants will be unenforceable, but fear that they will be sustained, may linger in jobs they would be happier (and more productive) leaving. But our rule of decision comes from state law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Reforming that law, or trying to undermine it, is beyond our remit.

As for DeFazio's counterclaim: Instant's CEO, Rona Borre, sent DeFazio a letter in late 2010 describing the terms of DeFazio's job for the next year. In a section captioned "Sales Goal [sic]", the letter reads:

Specific performance objectives are as follows —

- 2011 revenue goal — 21.75MM with 27% GPM

- 2011 net income goal — 1.3M

   º Revenue (50%)

   º Net income (35%)

   º Perm Division must achieve 600K in gross revenue (15%)

The next section, captioned "Salary and Performance Bonus", states that DeFazio is "eligible for $120,000 in performance bonus when Instant Technology achieves the above stated company revenue and net income goals."

Instant met the net income goal but not the revenue goal. DeFazio argues that the nested list of percentages shows she was entitled to partial credit; the firm met the "net income" mark, so she deserved 35% of $120,000 ($42,000). Instant

paid DeFazio only a $10,000 bonus in 2011. DeFazio wants the difference.

But the district court thought the list of percentages ambiguous. A plaintiff may recover even for breach of an ambiguous term if she demonstrates with evidence that her preferred interpretation is correct. *Air Safety*, *Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462–63 (1999). But the district court found that DeFazio failed to do so. 40 F. Supp. 3d at 1022.

DeFazio points out that Illinois law treats a term as "ambiguous" only if it is "susceptible to more than one meaning", *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011), and that Instant hasn't proposed any other reasonable interpretation of the list of percentages. True enough. But the problem is not that the list is susceptible to more than one meaning; it's that the list is not susceptible to even one meaning. It is a set of fragments. Sometimes context illuminates Delphic passages, but it offers no support in this case. If the list was supposed to indicate that DeFazio should receive partial bonuses for achieving only some of her goals, why did it come under the heading, "2011 net income goal — 1.3M" rather than next to the statement that DeFazio could earn $120,000 in bonus compensation? And why did "Revenue (50%)" and "Perm Division must achieve 600K in gross revenue (15%)" come under the "net income goal" heading, given that revenue differs from net income? Borre may have intended to convey that DeFazio would receive a partial bonus for partial accomplishment. But the letter does not say that, and DeFazio has not established its meaning with other evidence. She bears the burden of persuasion on the claim, so she loses.

AFFIRMED