**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200111-U

Order filed May 24, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| HOLSTEN PROPERTY MANAGEMENT CORPORATION, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0111 Circuit No. 19-LM-2524 |
| | ) ) | |
| MICHAEL E. HENDERSON, and All Unknown Occupants, | ) ) ) | The Honorable |
| Defendant-Appellant. | ) ) | Domenica Ann Osterberger, Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Presiding Justice O'Brien and Justice Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  In an appeal in an eviction case, the appellate court held that the trial court's ruling, finding that the defendant tenant had violated the provisions of the lease, was not against the manifest weight of the evidence.  The appellate court, therefore, affirmed the trial court's order evicting the defendant tenant.

¶ 2    Plaintiff, Holsten Property Management Corporation, filed a complaint in the trial court to evict defendant, Michael E. Henderson, from Henderson's apartment in Joliet, Illinois, for an alleged non-monetary violation of the lease.  Following a bench trial, the trial court found that

defendant had violated the lease provisions and entered an order evicting defendant. Defendant appealed. We affirm the trial court's judgment.

¶ 3                                              I. BACKGROUND

¶ 4        Plaintiff managed a federally-subsidized apartment building in Joliet, Illinois. Defendant had lived in an apartment in that building for the past 20 years. Defendant's apartment was about 500-700 square feet in size and had one bedroom, one living room, a kitchen, one bathroom, and some walkways and hallways. Defendant lived by himself in the apartment.

¶ 5        The most recent lease agreement between the parties was entered into in April 2018 and was for a period of one year (from July 1, 2018, to June 30, 2019) but would automatically continue for successive one year periods, unless it was terminated as provided for in the lease. Among other things, the lease provided that defendant agreed to obey the house rules, which were attached to the lease, and any additional rules that were added thereafter as long as the additional rules were reasonably related to the safety, care, and cleanliness of the building and the safety, comfort, and convenience of the tenants. Of relevance to this appeal, the 2019 Building Rules (presumably, the house rules) for the property provided that plaintiff reserved the right to inspect every apartment monthly upon giving 48 hours' notice to the tenant and that it was a violation of the lease for there to be "excessive clutter, unreported damages, trash, and obstructed walkways that prevent[ed] treatment" in the apartment.

¶ 6        In May 2019, the assistant manager of the apartment building, Lameka Miles, conducted an inspection of defendant's apartment prior to the annual renewal of defendant's lease. During that inspection, Miles saw that defendant had boxes stacked from floor to ceiling in certain areas of the apartment and had large buckets and pails stacked in other areas of the apartment; that some of the ingresses and/or egresses to or inside of the apartment were blocked; that some of

2

the windows, doors, heaters, walls, walkways, and closets were blocked; that there were several items stacked on top of the kitchen cabinets; that there was so much stuff stored in the bedroom that there was no place to put a bed or to sleep; and that there were certain fire and tripping hazards in the apartment due to all of the clutter. Miles determined that defendant's apartment had failed the inspection and documented the problems she had observed in an inspection report. A notice was provided to defendant that same month identifying the items that were out of compliance and that needed to be corrected by defendant in order to renew his lease.

¶ 7          Miles gave defendant a referral to resident services, a group or entity that assisted the building's residents to get in compliance with the terms of their leases and correct any problems that were discovered during the inspections so that the residents' leases could be renewed. Defendant was also told that the building had a locked storage space that was available to residents that defendant could use to store the items from his apartment. Residents could access the storage area by contacting management. Defendant declined the services that management had recommended.

¶ 8          A second inspection was conducted of defendant's apartment by Miles in June 2019. According to Miles, there were no changes in the condition of defendant's apartment since the previous inspection. Defendant was again notified of the violations. When Miles tried to talk to defendant about the violations, defendant was defensive and combative and responded that he did not feel that he was violating anything, that he was not going to remove the items from his apartment, and that he did not understand why he would have to remove those items. Miles explained to defendant the housekeeping standards that were in place as well as the ordinance that applied.

3

¶ 9        Miles conducted a third inspection of defendant's apartment in August 2019. During that inspection, Miles again saw that defendant's apartment had blocked egress, safety hazards in the bedroom, and housekeeping issues.

¶ 10        A fourth inspection of defendant's apartment was conducted by Miles in September 2019. According to Miles, there were no changes in the condition of defendant's apartment since the previous inspection. Miles found during the fourth inspection that defendant's apartment still had blocked egress, the bedroom door was still blocked, the closet doors were blocked, the exhaust fan in the kitchen was blocked, and there were items in excess on top of the kitchen cabinets. Miles determined, therefore, that defendant's apartment had failed the fourth inspection.

¶ 11        During that same month, Miles served a 10-day eviction notice on defendant. The notice stated that defendant's lease was being terminated because defendant had violated certain provisions of the lease that required defendant to keep his apartment in a clean and safe condition in that defendant had excessive clutter throughout his apartment, the clutter prohibited ingress and egress to the bedroom, there were tripping hazards in the hallways, there was excessive clutter on top of the cabinetry that could fall or could cause the cabinets to fall, there were blocked heaters and windows, and there was clutter stacked so high that it posed a falling danger. Shortly thereafter, Miles again explained to defendant the problems that defendant needed to correct in his apartment.

¶ 12        In October 2019, plaintiff filed an eviction complaint in the trial court in the instant case. Plaintiff alleged in the complaint that defendant had violated certain paragraphs of the lease as follows:

"Specifically, you have excessive clutter throughout your unit. The clutter prohibits ingress and egress to the bathroom. There are tripping hazards in the hallways. There is excessive clutter on top of the cabinetry that could fall or cause the cabinets to fall. There are blocked base board heaters and windows. The clutter is stacked too [*sic*] that it poses a falling danger."

Plaintiff sought possession of the premises and a judgment for costs and all rents accruing through trial.

¶ 13        The following month, November 2019, Miles conducted her fifth and final inspection of defendant's apartment. During that inspection, Miles asked defendant if he was interested in resolving the situation so that management could move forward in renewing defendant's lease, as the parties had apparently agreed in the trial court. Defendant stated that he was not willing to work with management and began videotaping Miles and a fellow employee in defendant's apartment. According to Miles, at the time of the fifth inspection, defendant's apartment still had excessive clutter—boxes were still stacked to the ceiling; ingresses and egresses were still blocked; the closet was still blocked; and there were still safety, fire, and tripping hazards. The only change that had taken place in the condition of defendant's apartment from the first inspection until the fifth inspection was that one of the televisions had been moved to the middle of the floor away from the second window in the living room. Miles determined, therefore, that defendant's apartment had failed the fifth inspection. After the fifth inspection, defendant was given housekeeping inspection checklists that identified the deficiencies that defendant needed to correct.

¶ 14        In January 2020, plaintiff's case proceeded to a bench trial in the trial court. Both sides were represented by attorneys. The trial took only a short time to complete. During the trial,

plaintiff called Miles to testify as its only witness. Miles's testimony provided most or all of the facts as set forth above. In addition to that testimony, plaintiff also admitted numerous exhibits into evidence, including the lease, the building rules, the 10-day notice of termination, notices that were sent to defendant of the inspection results, some of the referrals for services that were sent on defendant's behalf, and photographs from some of the inspections showing the condition of defendant's apartment.

¶ 15    The 73-year-old defendant testified as the only witness for the defense and denied that he had violated any of the lease provisions.[1] According to defendant, management had been telling him for the past 10 years that he had too much clutter in his apartment and that he was violating the federal Department of Housing and Urban Development's (HUD) regulations but would never produce those regulations, even though defendant had demanded that management show him the regulations he was violating. Defendant testified further that the boxes in his apartment contained items of personal property, not trash or clutter, and that the buckets contained canned goods, not flammable items. Defendant maintained that there was nothing in his apartment blocking the operable windows, the closet doors, the front door, the hallways, or blocking or touching the heaters. Defendant admitted into evidence several pictures that had been taken in July, August, and November 2019 that defendant believed supported his testimony. Those pictures have not been made part of the record on appeal.

¶ 16    After all of the evidence had been presented and the attorneys had made their closing arguments, the trial court found that defendant had violated the provisions of his lease and entered an order evicting defendant from the premises (giving plaintiff possession of the

---

[1] Defendant also provided in his testimony some of the information that has been set forth previously.

premises). In the order, the eviction was stayed until the end of February 2020. Defendant filed a motion to reconsider, which the trial court denied.

¶ 17     Defendant filed a self-represented appeal. After filing his notice of appeal, defendant filed a motion asking the trial court to stay the eviction order until defendant's appeal had been ruled upon. The trial court granted defendant's motion to stay.

¶ 18                                II. ANALYSIS

¶ 19     On appeal, defendant argues that the trial court erred in finding that defendant had violated his lease and in granting plaintiff's complaint for eviction on that basis. In support of that argument, defendant asserts first that plaintiff failed to prove that the provisions it claims defendant violated was in the lease. Instead, defendant contends, plaintiff's allegations of a lease violation were nothing more than the personal opinions of plaintiff's employees, who were not building inspectors. In addition, defendant maintains, the trial court found that defendant had violated the lease without even specifying which lease provisions (or HUD regulations) defendant had violated. Second, defendant asserts that plaintiff's complaint for eviction should have been rejected outright because it failed to comply with several of the statutory pleading requirements. For those reasons, defendant asks that we reverse the trial court's eviction order and that we reinstate or renew his lease for his apartment.

¶ 20     Plaintiff argues that the trial court's ruling was proper and should be upheld. In support of that argument, plaintiff makes two main assertions. First, plaintiff asserts that defendant has forfeited all of his arguments on appeal, including those criticisms regarding plaintiff's complaint, because he failed to raise those arguments in the trial court. Second, plaintiff asserts that the evidence presented in the trial court was sufficient to prove that defendant had violated

7

the lease and that the trial court's ruling, therefore, was not erroneous. For those reasons, plaintiff asks, although somewhat implicitly, that we affirm the trial court's judgment.

¶ 21	A trial court's ruling made after a bench trial, such as the eviction proceeding in the present case, will not be reversed on appeal unless it is against the manifest weight of the evidence. See *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 12. A ruling is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the ruling itself is unreasonable, arbitrary, or not based upon the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Under the manifest weight standard, deference is given to the trial court as finder of fact because the trial court is in a better position than the reviewing court to observe the conduct and demeanor of the parties and witnesses. *Id.* A reviewing court, therefore, will not substitute its judgment for that of the trial court as to the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn from the evidence. *Id.* at 350-51.

¶ 22	After having reviewed the record in the present case, we find that the trial court's determination—that defendant had violated the lease—was well-supported by the evidence. The evidence presented at defendant's bench trial showed that Miles inspected defendant's apartment numerous times over a several month period. Each time, Miles observed the same problems: that boxes were stacked from floor to ceiling; that windows, doors, heaters, closets, and walkways were blocked; and that there were numerous tripping and safety hazards in the apartment. Defendant was advised of the violations, given repeated opportunities to correct the problems, and also provided with services that would assist him in doing so and access to a storage unit. Despite plaintiff's efforts, defendant repeatedly refused to correct the problems. The condition of defendant's apartment was in direct violation of plaintiff's house rules, which were

incorporated by reference into the terms of the lease and which specifically prohibited excessive clutter. Although defendant's testimony and pictures contradicted some of what Miles had stated as to the condition of defendant's apartment, even as of the trial date, defendant did not dispute that he still had boxes stacked floor to ceiling in the apartment. We must conclude, therefore, that the trial court's finding of a lease violation was not against the manifest weight of the evidence. See *id.* at 350.

¶ 23    As for defendant's criticisms about plaintiff's eviction complaint, all of those criticisms were forfeited when plaintiff failed to raise those criticisms in the trial court. See 735 ILCS 5/2-612(c) (West 2018) (stating that "[a]ll defects in pleadings, either in form or substance, not objected to in the trial court are waived"). We will not address those criticisms further here. We do, however, agree with defendant that his other argument was sufficiently raised in the trial court and have, therefore, addressed it, as indicated above.

¶ 24    III. CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 26    Affirmed.