2022 IL App (1st) 211610-U

No. 1-21-1610

Fourth Division
June 30, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE SEGERDAHL CORPORATION, d/b/a SG360°, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | No. 2021 CH 04950 |
| ANDREW GIOVANNI and AMERICAN LITHO, INC., | ) ) | The Honorable |
| Defendants | ) ) | Neil H. Cohen, Judge Presiding. |
| (Andrew Giovanni, Defendant-Appellant). | ) ) ) | |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court's grant of a preliminary injunction enforcing an employee restrictive covenant agreement is affirmed where the employer identified a legitimate business interest in protecting its confidential information and the circuit court properly found that there was a substantial question of fact as to whether the failure to provide the employee with an annual bonus opportunity constituted a material breach of the agreement.

¶ 2    The instant appeal arises from the circuit court's grant of a preliminary injunction enforcing an employee restrictive covenant agreement between plaintiff The Segerdahl Corporation d/b/a SG360° (SG360) and defendant Andrew Giovanni (Giovanni), which prevented Giovanni from working for defendant American Litho, Inc. (American Litho), a direct competitor of SG360. On appeal, Giovanni contends that the circuit court erred in granting the preliminary injunction, as the restrictive covenant was unenforceable since (1) SG360 was not protecting a legitimate business interest and (2) SG360 had breached the agreement through its own conduct. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4    SG360 is an end-to-end print and direct marketing solutions provider, providing "multichannel direct marketing solutions and services across the entire lifecycle of a direct marketing campaign, including, but not limited to, data management, data analytics, design, print production, fulfillment and delivery." Giovanni commenced working for SG360 in 2012 as its manager of data services production, after previously having worked for a different direct marketing company. On March 14, 2017, Giovanni signed an "Employee Restrictive Covenant Agreement" (agreement), in which he agreed, in part, to certain confidentiality and noncompetition obligations both during and after his employment. In exchange, Giovanni received (1) a promotion to director of data services production, (2) a salary increase from approximately $117,000 to $150,000, (3) an annual bonus opportunity of up to 20% of his base salary, and (4) the promise of one year of severance upon termination from SG360 if certain conditions were met.

¶ 5    As is relevant to the instant appeal, one of the provisions in the agreement limited Giovanni's ability to compete with SG360 for a period of 12 months following the end of his

employment. In August 2021, however, Giovanni informed SG360 that he was resigning his position effective September 1, 2021, and that he had received an offer to join American Litho, a direct competitor of SG360, in a senior management position. Giovanni's supervisor attempted to persuade him to stay with SG360, and informed him that working for American Litho would result in a breach of the agreement, but Giovanni nevertheless accepted the new position.

¶ 6                                        *Complaint and Temporary Restraining Order*

¶ 7          On September 29, 2021, SG360 filed a verified complaint for injunctive relief against Giovanni and American Litho,[1] seeking an injunction preventing Giovanni from breaching the agreement and enjoining American Litho from "intentionally inducing such breaches." SG360 alleged that Giovanni's position with American Litho would jeopardize SG360's confidential business information, trade secrets, technology, customer and vendor relationships, and goodwill and would provide American Litho with an unfair competitive advantage. SG360 accordingly sought an injunction enjoining Giovanni from working for American Litho "in a capacity that involves its data analytics, commercial printing and direct mail marketing services" until September 1, 2022. On the same day, SG360 also filed an emergency motion for a temporary restraining order and preliminary injunction, as well as an emergency motion for limited, expedited discovery on the issue.

¶ 8          On October 6, 2021, the circuit court granted SG360's motion for a temporary restraining order in part, enjoining Giovanni from working for American Litho until a preliminary injunction hearing scheduled for November 19. The court further permitted SG360 and Giovanni to take limited discovery prior to the hearing.

---

[1] American Litho is not a party to the instant appeal.

3

¶ 9        On November 15, 2021, Giovanni filed a motion to dissolve the temporary restraining order, claiming that SG360 had materially breached the agreement and, therefore, could not seek to enforce it in court. Giovanni claimed that one term of the agreement provided that he would be afforded the opportunity to earn an annual bonus based on certain goals and objectives established by SG360. The company, however, never set any goals or objectives, meaning that Giovanni was unable to ever earn the bonus. The circuit court denied Giovanni's motion on November 19, 2021, prior to the preliminary injunction hearing.

¶ 10        *Preliminary Injunction Hearing*

¶ 11        Two witnesses testified during the preliminary injunction hearing: William Tallent, testifying as corporate representative of SG360, and Giovanni.

¶ 12        Tallent's Testimony

¶ 13        Tallent had been SG360's senior vice president of operations strategy since April 2019, and his responsibilities included leading the data services group for which Giovanni worked. Tallent testified about the nature of SG360's business, including the competitiveness of the industry. He also testified that SG360 engaged in business throughout the United States, and that American Litho was one of SG360's main competitors.

¶ 14        Tallent testified that Giovanni reported to a senior vice president named Craig Jenkins, who reported to Tallent. In his position as director of data services, Giovanni supervised 15 to 25 programmers. Tallent testified that Giovanni also operated as a "clearinghouse" with respect to all parts of the organization's client interface, including interactions with sales and marketing, customer service, manufacturing, and data analysis and programming operations. Giovanni attended daily meetings, was involved with the "onboarding" of new clients, and also worked with clients personally. Tallent testified that information that Giovanni would have

had access to in his position included "processes, procedures, automation, [and] techniques"; information management and delivery methods; schedules of client events and processes for those events; order entries, including estimates and specific pricing information; and data services pricing. Giovanni also received a "project manager status order list," which was a document containing the status of each order, and participated in the "enterprise scheduling group," which discussed the status and scheduling of projects.

¶ 15        Tallent testified that SG360 developed a number of tools in the area of data services which allowed the company to effectively serve its clients. The processes used by SG360 were very efficient, which allowed a competitive advantage in completing projects and reaching a client's prospective customers more quickly. Tallent testified that SG360 took "extraordinary steps" to protect the secrecy of its confidential information, such as restricting access to certain areas of the company facilities, conducting information security awareness training, and requiring employees to sign documents including (1) a confidentiality agreement, (2) an "Acceptable Use Policy" concerning use of the company's electronic equipment, (3) a data security policy, (4) a password policy, and (5) an employee handbook.

¶ 16        Tallent testified that he received a notice of resignation from Giovanni in August 2021 and spoke to Giovanni several times to try to convince him to stay with SG360. During his conversations with Giovanni, Giovanni did not indicate that his decision to resign involved any concerns or complaints about bonuses.

¶ 17        On cross-examination, Tallent testified that he was not yet working for SG360 when Giovanni signed the agreement at issue in 2017. Tallent acknowledged that the agreement provided that Giovanni would be afforded the opportunity to earn an annual bonus that would be based on specified goals and objectives, but that his personnel file did not indicate that any

such goals or objectives were specified in 2017, 2018, 2019, 2020, or 2021. Tallent further acknowledged that a performance bonus plan enacted by SG360 in 2021 was based on financial metrics, not on goals or objectives.

¶ 18                                           Giovanni's Testimony

¶ 19       Giovanni testified that, prior to working at SG360, he was a programmer at Lehigh, another direct mail printer. When he moved from Lehigh to SG360, he continued performing similar work, all of which used commercially available industry software. In 2017, Giovanni considered leaving SG360, so the company offered him a promotion in an attempt to retain him. Giovanni testified that he would not have signed the agreement if he had not been offered the increase in salary and the bonus opportunity, and that a supervisor informed him "off the record" that such agreements generally were not enforceable. Giovanni testified that his promotion did not give him any access to new information; while his responsibilities increased, the information and tools he used remained the same.

¶ 20       Giovanni testified that he was never provided any opportunities to earn a bonus, which he raised "a couple of times in passing" in 2017 and 2018. Giovanni also denied that he had any access to confidential information.

¶ 21       After the hearing, the parties submitted supplemental briefing on the issue of whether the failure to provide Giovanni with bonus opportunities constituted a material breach of the agreement.

¶ 22                                           *Circuit Court Order*

¶ 23       On November 24, 2021, the circuit court entered an order granting SG360's request for a preliminary injunction. The court found that SG360 had raised a fair question that (1) it had a clearly ascertained right in need of protection, (2) it would suffer an irreparable injury in the

absence of an injunction, (3) it lacked an adequate remedy at law, (4) it was likely to succeed on the merits of its breach of contract claim against Giovanni, and (5) the balance of harms weighed in favor of a preliminary injunction as it had demonstrated a meaningful risk of irreparable harm. The court noted that Tallent had testified as to Giovanni's duties after he received his promotion and signed the agreement, which included participation in numerous meetings and interactions with leadership in all areas of the company, and found that SG360 had a protectible interest in the information that Giovanni learned in his new position. The court further pointed to the fact that the industry was highly competitive, and found that the information that Giovanni possessed would result in harm if given to a competitor.

¶ 24    The circuit court addressed Giovanni's argument that there was no likelihood of success on the merits due to SG360's breach of the contract, but found the argument unpersuasive. The court found that there was no dispute that SG360 had failed to provide Giovanni with the opportunity to earn bonuses. The court found, however, that the question of whether the breach was material was a "complicated question of fact" that could not be resolved at this stage in the proceedings. The court acknowledged that Giovanni had testified that he would not have signed the agreement without the promise of the bonus opportunity but also noted that Giovanni never pursued the opportunity or raised its absence as an issue during his years of employment at SG360. Under the evidence before it, therefore, the circuit court determined that it could not find that the breach was material such that it prevented SG360 from enforcing the agreement.

¶ 25    Giovanni timely filed a notice of appeal, and this appeal follows.

¶ 26                                    ANALYSIS

¶ 27        On appeal, Giovanni contends that the circuit court erred in granting the preliminary

injunction where (1) SG360 had no legitimate business interest which could support

enforcement of the agreement and (2) SG360 materially breached the agreement and therefore

was unable to enforce its provisions. The purpose of a preliminary injunction is to preserve the

status quo pending a decision on the merits of a case, and it is an extreme remedy that should

be employed only where an emergency exists and serious harm would result if the injunction

is not issued. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill.

2d 356, 365 (2001). In order to obtain a preliminary injunction, the moving party must

demonstrate (1) a clearly ascertained right in need of protection, (2) irreparable injury in the

absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the

merits of the case. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). "On appeal,

we examine only whether the party seeking the injunction has demonstrated a *prima facie* case

that there is a fair question concerning the existence of the claimed rights. [Citations.]"

(Internal quotation marks omitted.) *Id.* The decision to grant or deny a preliminary injunction

is generally reviewed for an abuse of discretion. *Id.* at 62-63. However, the question of whether

injunctive relief is appropriate to enforce a restrictive covenant in an employment contract

depends on the validity of the covenant, which is a question of law that we review *de novo. Id.*

at 63.

¶ 28                                 *Protectible Right*

¶ 29        We first consider whether the circuit court properly found that SG360 demonstrated that it

had a clearly ascertained right in need of protection such that Giovanni could be prevented

from working for a competitor of SG360 for a period of one year after termination of his

8

employment. A restrictive covenant in an employment agreement is valid if it contains a reasonable restraint and the agreement is supported by consideration. *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 16. The restraint is reasonable only if it (1) is no greater than is required for the protection of a legitimate business interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *Id.* ¶ 17. Here, Giovanni challenges only whether SG360 has established that the agreement protects a legitimate business interest.

¶ 30　　　In the case of a postemployment restraint, the restraint is usually justified on the ground that the employer has a legitimate business interest in preventing the former employee from appropriating the employer's confidential trade information or customer relationships. *Id.* ¶ 34. Courts have also developed a number of factors that have been used to determine whether an employer has demonstrated a legitimate business interest, including the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions. *Id.* ¶ 43. Our supreme court has expressly cautioned, however, that such factors are nondeterminative and no one factor carries more weight than another—the determination of whether a legitimate business interest exists is based on the totality of the facts and circumstances of the individual case. *Id.*

¶ 31　　　Here, SG360 claimed that it had a legitimate business interest in protecting its confidential information, and Giovanni does not dispute that this may constitute a legitimate business interest. Giovanni, however, contends that SG360 failed to establish any basis for its claim that there was any confidential information in need of protection. We note that factual findings made by a circuit court are entitled to great deference and will be disturbed on review only where they are against the manifest weight of the evidence. *Gastroenterology Consultants of*

*North Shore, S.C. v. Meiselman*, 2013 IL App (1st) 123692, ¶ 13. A finding is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or where it appears to be unreasonable or not based upon the evidence. *Id.*

¶ 32     Giovanni first contends that SG360 did not identify any "confidential" information which was entitled to protection. Giovanni acknowledges that Tallent testified about the purportedly confidential information, but dismisses this testimony as vague and overly general. We do not find this argument persuasive. Tallent testified that, in his capacity as director of data services, Giovanni had access to "processes, procedures, automation, [and] techniques"; information management and delivery methods; schedules of client events and processes for those events; order entries, including estimates and specific pricing information; and data services pricing. Tallent further testified that Giovanni had extensive interaction with all departments involving the organization's client interface, and had access to information concerning the status of each order and project. We cannot find that it was against the manifest weight of the evidence for the circuit court to find that Tallent's testimony was sufficient to establish that SG360 had confidential information that was in need of protection.

¶ 33     Giovanni next claims that, to the extent that there was confidential information, he obtained access to that information prior to signing the agreement and, therefore, it could not serve as a legitimate business interest that was protected under the agreement. Again, however, Tallent testified to Giovanni's duties and responsibilities as director of data services and explained how, in his new position, Giovanni was the "clearinghouse" through which the company's client interactions were conducted, communicating with all departments involving the organization's client interface and having access to information concerning the status of each order and project. While Giovanni testified that he learned no new information during his four

years in that position and had no new access to information, we cannot find that it was against the manifest weight of the evidence for the circuit court to give Tallent's testimony more weight than Giovanni's testimony on this matter. We also note that the circuit court was clear in its order that SG360 had a legitimate business interest in protecting the confidentiality of "all the extra things" Giovanni learned in his new position, not in information that was previously known. Thus, Giovanni's preexisting knowledge did not factor into the court's finding that newly-learned information was properly protectible.

¶ 34    Finally, Giovanni claims that the purportedly confidential information was not "confidential" because SG360 did not take steps to protect it until years after his employment. Giovanni's argument, however, minimizes the fact that he received a promotion in connection with the execution of the agreement. In other words, this is not a situation in which he occupied the same role in the company even after execution of the agreement—instead, he had an entirely new position involving more responsibility. Indeed, after his promotion, Giovanni was only three levels from the top of the organization's hierarchy. We also note that Tallent made clear that SG360 did take steps to protect its information generally, such as restricting access to certain areas of the company facilities, including the area in which Giovanni worked; conducting information security awareness training; and requiring employees to sign documents including (1) a confidentiality agreement, (2) an "Acceptable Use Policy" concerning use of the company's electronic equipment, (3) a data security policy, (4) a password policy, and (5) an employee handbook. While Giovanni dismisses these requirements since Tallent did not testify to when they began, they nevertheless support SG360's claim that its information was not freely available to the public. Accordingly, we cannot find that the circuit court erred in finding that SG360 had demonstrated that it had a clearly ascertained right

11

in need of protection by virtue of its legitimate business interest in protecting its confidential information.

¶ 35                                                   *Breach of Contract*

¶ 36        We next consider Giovanni's claim that SG360's breach of the agreement meant that it could not enforce its provisions against him to prevent him from working for American Litho. Under general contract principles, a material breach of a contract by one party may be grounds for releasing the other party from his contractual obligations. *Mohanty*, 225 Ill. 2d at 70. This principle is equally applicable in considering the enforcement of a covenant not to compete. See, *e.g.*, *Galesburg Clinic Ass'n v. West*, 302 Ill. App. 3d 1016, 1018 (1999) (a breach of a partnership agreement may operate to discharge the duties of a covenant not to compete where the breach is material); *C.G. Caster Co. v. Regan*, 88 Ill. App. 3d 280, 285 (1980) (an employer's breach of an employment contract may be so material as to excuse the former employee's promise to abide by a restrictive covenant).

¶ 37        The question of whether a breach is material involves a determination of whether the breach defeated the bargained-for objective of the parties or caused disproportionate prejudice to the nonbreaching party, whether custom and usage consider such a breach to be material, and whether the allowance of nonperformance by the nonbreaching party would result in an unreasonable or unfair advantage. *Virenda S. Bisla, M.D., Ltd. v. Parvaiz*, 379 Ill. App. 3d 567, 572-73 (2008). Whether a material breach of contract has been committed is a question of fact and, accordingly, the circuit court's determination will not be disturbed unless it is against the manifest weight of the evidence. *Mohanty*, 225 Ill. 2d at 72.

¶ 38        Here, Giovanni claims that SG360 materially breached the agreement by failing to provide him with the opportunity to earn an annual bonus. The circuit court, however, found that the

question of whether the breach was material was a "complicated question of fact" that could not be resolved at this stage of the proceedings and that, on the evidence before it, it could not find that the breach was material such that it prevented SG360 from enforcing the agreement. We agree.

¶ 39    As the circuit court found, there is no real dispute that SG360 never provided Giovanni the opportunity to earn an annual bonus that was promised in the agreement. Giovanni testified that he would not have signed the agreement without the bonus opportunity, suggesting that the breach was material. Giovanni further testified, however, that he raised the issue only "a couple of times in passing" in 2017 and 2018, and Tallent testified that Giovanni never raised the issue with him or identified it as a reason he was leaving SG360. Thus, the importance of the bonus opportunity is unclear even from Giovanni's own testimony. At this stage of the proceedings, therefore, the circuit court properly determined that it could not find from the evidence before it that the breach was material such that it defeated the enforcement of the agreement.

¶ 40                                              CONCLUSION

¶ 41    For the reasons set forth above, the circuit court properly entered a preliminary injunction preventing Giovanni from working for American Litho where the agreement signed by the parties protected SG360's legitimate business interest in its confidential information and where the circuit court properly found that there was a substantial question of fact as to whether the failure to provide Giovanni with an annual bonus opportunity constituted a material breach which prevented the enforcement of the agreement.

¶ 42    Affirmed.